Robert Herbert MITCHELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–701.

Court of Criminal Appeals of Oklahoma.

April 16, 1976.

Leslie Earl, Public Defender, E. Terril Corley, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Frank Muret, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Robert Herbert Mitchell, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–151, for the offense of Burglary, First Degree, in violation of 21 O.S.1971, § 1431. His punishment was fixed at a term of eighteen (18) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Josephine Wyant who testified that she was 72-years-old and resided at 725 North Boston, Tulsa, with her 91-year-old husband. She stated that on January 7, 1975, she was watching the "Good Times" television program, and while in the kitchen happened to look up and see a large black male standing in her front bedroom doorway. According to her testimony, she could not be sure whether there was another man present, but believed that there was because she saw a "reflection" of another figure. Mrs. Wyant stated that she went to tell her husband, who was in the back bedroom, but was unable to make him understand. She then described how the man who had been standing in the doorway grabbed her arm, how she screamed, broke free, and ran to a neighbor's house for help. When she returned she found her injured husband lying in the back yard and discovered that her home had been "torn up." She also discovered that her purse, a billfold containing $38.00, a pair of gold cuff links, and a tie pin were missing. Mrs. Wyant further testified that she noticed her bedroom window to be open when she returned. She stated that she did not know the defendant and had not given him permission to take the cuff links or any of the other items. Mrs. Wyant then identified State's Exhibit No. 1 as the gold cuff links taken on January 7, 1975. She explained that she had given the cuff links as

a Christmas present to her husband about 15 years earlier and described the cuff links as having "little fish" on them. On cross-examination Mrs. Wyant testified that she could not identify the other figure in the bedroom.

The defendant in the instant case was charged as being that other figure in the bedroom.

The State's next witness was Maxine Miller who testified that she was 39-years-old, understood what it meant to tell the truth, and had completed the 11th grade, but had failed the 12th grade three times. Her testimony revealed that she knew the defendant and that on January 7, 1975, he was living with her and her husband in their apartment. She stated that on January 8, 1975, she had a conversation with the defendant and recalled part of the conversation as follows:

"A. [H]e made a statement that he had hit a man in the head for a pair of cuff links and some money. I don't even remember how much it was.

"Q. What did he say about that?

"A. He said he had hit a man in the head and he showed me the cuff links and he said that he—well, he said that he ran in the house, he thought the man had some money and he said that the woman ran out the back door and the one with him, he told him to go get her . . ." (Tr. 25)

Mrs. Miller described the cuff links as being gold with "a fish on them," and then identified State's Exhibit No. 1 as the cuff links which defendant had shown to her. Mrs. Miller further testified that one Andy Drywater had borrowed the cuff links from the defendant and that she subsequently obtained the cuff links from Drywater and gave them to the police.

On cross-examination Mrs. Miller admitted that at the preliminary hearing she had testified that she could not remember the exact day on which the conversation with the defendant had taken place, but after the preliminary examination she had gone through her check stubs and now recalled the day.

Charles Miller was the next witness for the State and testified that he had previously been convicted for car theft and for carrying a concealed weapon. He testified that he was married to Maxine Miller and prior to the defendant's arrest was in jail for reckless driving and not having a driver's license. Mr. Miller testified that on the day of his release from jail he went with the defendant to a Quik-Trip store and purchased a quart of beer. Following the purchase they visited a friend's house and after their departure from the friend's house Miller recalled the following conversation:

"Q. And, where did you and Mr. Mitchell go when you left?

"A. We walked over to Boston and back down toward our place on Cincinnati.

"Q. Do you remember the time that you were with Mr. Mitchell? Did you have a conversation with him about anything unusual?

"A. Yes, sir.

"Q. What was that?

"A. When we were going to—down to Boston, Cincinnati he said, 'I hit this old man in the head. Did your wife tell you about it?'

"Q. Where were you?

"A. 700 block on Boston.

"Q. Did you know what he was talking about?

"A. Not really at the time, no.

"Q. Had your wife told you anything about it?

"A. She mentioned it, I guess, before, but at that time it wasn't in my mind, you know.

"Q. What did he say?

"A. He said that he hit an old man in the head and got a set of cuff links, a tie clip and $5. He said he hit him in the head with a tire iron." (Tr. 40)

The witness then identified State's Exhibit No. 1 as the cuff links which the defendant had left at his apartment. He explained that he turned the cuff links into the police because he did not want to be "involved in it."

The State's final witness was Gary Horn who testified that he was a police officer for the City of Tulsa and was working on a first degree burglary case in January, 1975. He stated that he knew the Millers and had recovered the cuff links and a tie clasp from Mrs. Miller. He then identified State's Exhibit No. 1 and established its chain of custody. Thereafter, both the State and the defense rested.

In the first assignment of error, the defendant asserts that he was deprived of a fair trial because testimony given by two witnesses, Charles and Maxine Miller, was unbelievable and unreliable, and because the District Attorney improperly bolstered their testimony. To support his proposition that the testimony given by the Millers was unbelievable and unreliable, the defendant asks this Court to determine from designated portions of the record that due to their low mentality the Millers were not competent witnesses.

■ It is well settled that on objection to the competency of witnesses on the ground of mental unsoundness, the trial court must determine competence and the trial court decision is reversible only for clear abuse of discretion. *Tilford v. State,* Okl.Cr., 437 P.2d 261 (1967). Furthermore, when a person is offered as a witness his or her mental capacity is presumed and when the witness is objected to on the ground of mental incompetency, the burden is on the objecting party to show such incompetency. *Beard v. State,* 37 Okl.Cr. 62, 256 P. 354 (1927). However, the record in the instant case fails to show that the defendant made objection to the witnesses and for an issue to be considered on appeal there must have been an objection made in the trial court with the alleged error preserved in the record for consideration by

this Court. *Sandersfield v. State,* Okl.Cr., 507 P.2d 922 (1973); *Thompson v. State,* Okl.Cr., 453 P.2d 314 (1969); *Reid v. State,* Okl.Cr., 290 P.2d 775 (1955). Therefore, this proposition, being improperly before this Court, is without merit.

The defendant also asserts within his first assignment of error that the prosecuting attorney improperly bolstered the testimony of his witnesses. The defendant points to the following two portions of the record to show that the prosecutor unduly bolstered the testimony of Mr. Miller:

"Q. You were in my office the other day?

"A. Yes, yesterday.

"Q. And, we talked about this case, didn't we?

"A. Yes, sir. You instructed me to tell the truth.

"Q. Are you?

"A. Yes, sir.

"MR. CORLEY: I object. That is bolstering, self-serving.

"THE COURT: Overruled.

"MR. CORLEY: Exception." (Tr. 43)

\* \* \* \* \* \*

"Q. Did you, your wife just testify before you, did you tell her what to testify to, Charles?

"A. No, sir.

"MR. CORLEY: Object, bolstering.

"THE COURT: That would be bolstering. I will sustain the objection.

"MR. HOPPER: I have no further questions." (Tr. 44)

■ In support of his proposition, the defendant relies on *Noyes v. State,* Okl. Cr., 516 P.2d 1368 (1973), and *Doser v. State,* 88 Okl.Cr. 299, 203 P.2d 451 (1949). These cases indicate that it is improper to introduce evidence as to what a witness may have sworn to or stated on some previous occasion simply to confirm or bolster the testimony in the absence of some attack on the testimony of the witness. However, in the first exchange, the wit-

ness was not testifying as to what he had stated on a previous occasion but simply what he had been told. While the question asked was improper, the effect was certainly harmless.

 We note that the defense counsel's objection to the second portion of the challenged testimony was sustained by the trial court. Although errors in the admission of evidence can generally be cured by an admonition to the jury after an objection has been sustained, any allegation of error is waived by failing to ask for an admonition or a mistrial. *Kennedy v. State,* Okl.Cr., 528 P.2d 317 (1974). Considering that the objection was sustained, and in view of the fact that no motion for mistrial was made by the defendant, we find this proposition to be without merit.

The defendant's second assignment of error contends that the State failed to prove the crime of burglary in the first degree because it failed to establish that the crime was committed in the nighttime. Title 21 O.S.1971, § 1431, defines burglary in the first degree, in part, as follows:

"Every person who breaks into and enters in the night time the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, . . .

 \* \* \* \* \* \*

"3. [I]s guilty of burglary in the first degree."

Mrs. Wyant testified as to the time of the occurrence as follows:

"Q. I will ask you, ma'am, directing your attention to the 7th day of January of 1975, did anything unusual occur at your residence on that date?

"A. Yes.

"Q. And, would you describe to the ladies and gentlemen of the Jury, what time of day or night did this unusual occurrence take place?

"A. Well, about a quarter till 8:00, I believe.

"Q. And, how do you remember that, ma'am?

"A. Well, we were looking at Good Times on television that comes on at 7:30." (Tr. 10–11)

While the direct testimony of Mrs. Wyant does not specifically establish that the crime occurred in the p.m., her response to a question during cross-examination leaves the unmistakable inference that the crime occurred in the evening:

"Q. Mrs. Wyant, I just have a couple of questions, ma'am, and I will let you go. Now, you say on *that night,* ma'am, that what you saw was one black man?

"A. Yes." (Tr. 19, emphasis added)

Furthermore, an inspection of the Tulsa *Tribune,* January 7, 1975, § B, at 12, col. 1, and the Tulsa *Daily World,* January 7, 1975, § A, at 8 col. 1, indicates that "Good Times" is regularly televised in the evening. Therefore, from the testimony presented the jury could reasonably have concluded that the burglary did occur in the evening.

 The defendant also contends that the State failed to show the time at which sunrise or sunset occurred on the date of the alleged crime. Nighttime is defined in 21 O.S.1971, § 1440, as "the period between sunset and sunrise," and the Court of Criminal Appeals may take judicial notice that the sun set at approximately 5:25 p.m. on January 7, 1975. *Sanders v. State,* 97 Okl.Cr. 388, 264 P.2d 358 (1953). Therefore, the defendant's contention that the State failed to prove that the burglary was committed in the nighttime is without merit.

The defendant urges in his third assignment of error that the District Attorney committed reversible error when he injected into his closing argument issues which were not for the jury's consideration. The statement objected to by the defendant is as follows:

"MR. HOPPER: I read everyday in the newspapers and you hear it every night

on the television about the increase of crime rate, not only throughout the United States, but right here in Tulsa County. But, the unsolved burglaries, burglaries, ladies and gentlemen, the usual burglar goes in when nobody is home. That is Second Degree Burglary. When there's someone home, that's First Degree Burglary. Someone living there, someone who's standing to be injured by the burglar, that is what makes it First Degree Burglary. . . ." (Tr. 60)

 The basis of the defendant's contention is that the crime rate was not an issue and such argument diverted the jury from its duty to decide the case on the evidence. We agree that this type of argument is improper, but find it difficult to say that such prejudice resulted so as to require reversal. This Court has held many times that only when the prosecutor's argument is grossly improper and clearly prejudicial will the conviction be set aside. *Sizemore v. State,* Okl.Cr., 507 P.2d 1330 (1973). In light of the ample undisputed evidence this Court is of the opinion that the prosecutor's argument was not so prejudicial as to warrant a reversal. *McKee v. State,* Okl.Cr., 532 P.2d 472 (1975).

The defendant urges in his fourth assignment of error that he was deprived of a fair and impartial trial due to the accumulation of errors and irregularities in his trial. In *Haney v. State,* Okl.Cr., 503 P.2d 909 (1972), we held that if the previous assignments of error are without merit it follows that a proposition which asks that the previous propositions be considered collectively would also be without merit. In the instant case we have found the first three assignments of error to be without merit, and therefore it follows that this assignment of error is also without merit.

 The defendant's final assignment of error contends that the sentence imposed was excessive. In view of the nature of the offense, we need only observe that the punishment was within the range provided by law and does not shock the conscience of this Court. *Turner v. State,* Okl.Cr., 479 P.2d 631 (1971). We find this assignment of error to be without merit.

For the reasons set forth above, it is the opinion of this Court that the judgment and sentence appealed from should be, and the same is, hereby, AFFIRMED.

BRETT, P. J., and BLISS, J., concur.