The STATE of Oklahoma, Appellant,

v.

Robert Brady YOUNG, Appellee.

No. O–76–976.

Court of Criminal Appeals of Oklahoma.

March 17, 1977.

Paul C. Braun, Dist. Atty., Michael D. Evans, Asst. Dist. Atty., Tillman County, for appellant.

Clyde H. Amyx, II, Massad & Amyx, Frederick, for appellee.

## OPINION

BUSSEY, Presiding Judge:

This is an appeal by the State of Oklahoma on a reserved question of law, pursuant to 22 O.S.1971, Ch. 18, App. Rule 6, et seq., from the District Court, Tillman County, Case No. CRF–76–59. The appellee, Robert Brady Young, hereinafter referred to as defendant, was charged with the crime of Unlawful Possession of a Controlled Dangerous Substance With Intent to Distribute. At the preliminary hearing the Honorable Harrison Roe sustained the defendant's objections to the introduction of the evidence which formed the basis of this charge. Whereupon the State gave notice of its intent to appeal to the District Court, pursuant to Rule 6, and the defendant was released to bail. Said appeal was perfected, and the Honorable Carl Dolman affirmed the magistrate's ruling. Pursuant to Rule 6 of 22 O.S.1971, Ch. 18, the State has perfected an appeal to this Court on a reserved question of law.

The first witness for the State was William J. Caveny, forensic chemist with the Oklahoma State Bureau of Investigation. Essentially, he identified State's Exhibit No. 1 as containing various controlled dangerous substances.

The State's second witness was Tipton Police Chief Dean Stinley, the arresting officer, whose testimony engendered the controversy in this case. On direct examination the witness stated that on October 23, 1976, he and Officer Riley Howard observed the defendant from a distance of 300 or 400 yards leave his residence in an automobile which was accelerated at a high rate of speed. The witness stated that he followed the defendant, without turning on the patrol car's emergency equipment, in order to effect a traffic stop. After proceeding some distance the officer observed the defendant in a school parking lot talking to two other individuals in another car. As the officers approached, these other individuals left. The witness then motioned to the defendant, who pulled his car alongside the police cruiser. The defendant stepped from his vehicle, and the officer asked him if he had been drinking. The officer had the suspicion because in the past numerous empty beer containers had been found in this parking lot. Defendant replied that he

had not been drinking, although the defendant stated that he did have some beer in the trunk of his car. Knowing that the defendant was only 18 years of age, the witness asked if he might look in the trunk of defendant's car. The defendant replied, according to Chief Stinley, "Go ahead. I have nothing to hide." The witness stated that the defendant then unlocked the trunk and opened it. The beer was immediately observed in a large Styrofoam ice chest. The witness further stated on cross-examination that as he continued his search the defendant became increasingly nervous, and the officer had to ask the defendant to step away from himself several times. The witness further stated that he heard the defendant shout something and that out of the corner of his eye he saw the defendant lunge at him with clenched fist. The witness stated that he deflected the blow with his arm, but that the defendant closed the trunk on the witness' hand. Subsequent to this, the defendant was arrested for assault on an officer, handcuffed, placed in a patrol car, and read his Miranda rights. The witness then called the Sheriff and a tow truck. While awaiting their arrival, the witness stated that he "inventoried" the vehicle prior to its impoundment, and that while so doing he discovered a brown leather shaving kit which contained narcotics. This was turned over to the Sheriff when he arrived, as was the defendant. The witness also stated that he further inventoried the car several days later, suspecting it might contain more narcotics.

On cross-examination the witness revealed that at the time he originally gave pursuit of the defendant, the defendant was suspected of narcotics involvement, and that the defendant's home was under a "stake out." The witness further stated on cross-examination that after he stopped the defendant in the school parking lot, the defendant was no longer free to go, and that though he suspected the defendant might be drinking, he had not seen the defendant drinking on that day, nor had he ever observed the defendant drinking in the school parking lot. On further questioning the witness restated that he had asked the defendant if he had been drinking and that the defendant replied, "No, I have not, but I have some beer in my trunk." At this point the witness stated he had the defendant breathe in the face of his fellow officer, in order to ascertain whether the defendant had been drinking. The other officer could detect no odor of alcohol. The witness then restated the circumstances relative to the search of the trunk. However, on cross-examination he stated in this regard that he actually did not remember who had taken the keys from the ignition and unlocked the trunk. After more questioning he stated that although he did not remember who had done so, it possibly could have been himself. Similarly, he recanted his testimony relative to the alleged assault, stating that he did not actually see the defendant swing at him with a clenched fist. He further stated in this regard that the defendant attempted to close the trunk, while the witness' hand was in it, and that this prompted the arrest for assault. The witness reiterated that the search continued after this arrest because of the need to "inventory" impounded vehicles. Lastly, the witness stated that his suspicions of the defendant's narcotics involvement were not enough to obtain a search warrant, and that the defendant was not advised of his Miranda rights before the search of the trunk began.

Sheriff Steve Sanders was the State's third witness. He transported the defendant from the scene of arrest to jail. While en route the Sheriff asked the defendant if he had been advised of his rights. The defendant replied that he had not. The witness also testified as to the chain of custody of the contraband.

Riley Howard, Tipton Police Officer, was the State's final witness, and he stated that Chief Stinley advised the defendant of his Miranda warnings in the witness' presence. He further stated that Stinley told the defendant prior to the search that the defendant need not consent to the search.

At this point the State moved to introduce the seized narcotics into evidence, the defendant objected thereto, and after argument the court sustained the defendant's objections. The defendant was then ordered discharged. At this point the State gave notice of its intent to appeal to the District Court pursuant to Rule 6. Such appeal was perfected before the Honorable Carl Dolman, Associate District Judge of Cotton County. His ruling affirmed that of the preliminary magistrate.

■ In its first assignment of error the State asserts that the preliminary magistrate erred when he suppressed the evidence which formed the basis of this charge.[1] The evidence was obtained pursuant to a search without a warrant. In this regard, we said in *Case v. State,* Okl.Cr., 519 P.2d 523, 524 (1974), that:

" . . . Therefore, once a defendant establishes that evidence was seized as the result of a search without a warrant, the burden shifts to the State to show that the search is reasonable because it falls within the 'few specifically established and well delineated exceptions' to the Fourth Amendment requirement that a search have the prior approval of a judge or magistrate. . . . " (Citations omitted)

Further, we said in *Case v. State,* supra, at page 524:

"Where, as in this case, the exception to the requirement of a warrant claimed is that the defendant consented to the search, the proof offered by the State must be 'clear and convincing that the waiver was a free and voluntary act,' *Hogan v. State,* 94 Okl.Cr. 375, 236 P.2d 276, 277 (1951); *Edwards v. State,* 83 Okl.Cr. 340, 177 P.2d [143] at 146."

■ The evidence relative to the defendant's consent is far from "clear and convincing." On this point the arresting officer testified first that the defendant had removed the keys from the ignition and unlocked and opened the trunk; then the officer stated that he did not really know who had done so; and, he finally stated that it could possibly have been himself. On this point alone the magistrate would have been justified in finding that there was no consent, and that the search was thus illegal.

■ The State contends, however, that since the drugs were found after the defendant had been properly arrested for assaulting a police officer, their discovery can be justified on the basis of an inventory of the vehicle. However, we need only note here that the District Court Judge specifically found the inventory to be "subterfuge to continue the illegal search" (Hearing on motion to appeal, November 24, 1976), and the evidence would support such a finding. See, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Much of our decision herein rests upon implied findings of fact by the magistrate. Since he did not make formal findings, our inquiry is limited to whether or not there was sufficient evidence in the record for him to rule as he did. We have often said that the question of the suppression of evidence is for the trial court, or the examining magistrate, in the first instance, and that where his ruling is based upon competent evidence this Court will not disturb it. *Luna v. State,* Okl.Cr., 481 P.2d 814 (1970). The State's first assignment of error is, therefore, without merit.

■ The State's second assignment of error is that the discharge of the defendant was premature in that it prevented the State from introducing further evidence

---

1. Said magistrate made no statement of law as to why he was suppressing the evidence. On appeal to the District Court the judge therein held, " . . . it is my feeling that the con-

sent was not properly obtained. Second, that this inventory was actually a subterfuge to continue the initial illegal search. . . . " (Hearing on motion to appeal, November 24, 1976.)

that might have justified the warrantless search on other grounds. The record reveals, however, that at the time at which the defendant was ordered discharged the State interposed no objection thereto, nor in any way indicated that they wished to present additional evidence. Furthermore, all witnesses who were endorsed on the information had been called and examined. We are thus of the opinion that there being

no objection interposed, the State thereby waived any error which may have occurred. *Mitchell v. State,* Okl.Cr., 549 P.2d 96 (1976).[2]

For the foregoing reasons the order of the magistrate is *AFFIRMED.*

BLISS and BRETT, JJ., concur.

2. However, we direct the court's attention to 22 O.S., Ch. 18, App., Rule 6.5, which sets out the procedure to be followed under these circumstances.