COMMONWEALTH vs. LAWTON B. KINGSBURY.

Middlesex.   May 7, 1979. — August 10, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Breaking and Entering. Practice, Criminal,* Directed verdict. *Evidence,*
    Judicial notice, Time of sunset. *Words,* "Night time," "Dwelling
    house."

Evidence at a criminal trial was sufficient to warrant a finding that
    a breaking and entering occurred in the "night time," as required
    by G. L. c. 266, § 15, even though there was no evidence as to the
    precise time of sunset on the day the crime was committed.  [752-
    755]
Evidence at the trial of a defendant charged with breaking and enter-
    ing a dwelling house in the night time with intent to commit a
    felony was sufficient to warrant a finding that the apartment brok-
    en into was a dwelling house within the meaning of G. L. c. 266,
    § 15, even though it had no furniture or other personal property in
    it.  [755-757]

INDICTMENTS found and returned in the Superior Court
on January 12, 1977.

The cases were tried before *Garrity*, J.

After review by the Appeals Court, the Supreme Judi-
cial Court granted leave to obtain further appellate re-
view.

*Richard J. Hayes* for the defendant.

*William L. Pardee*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J. The Appeals Court sustained the defend-
ant's conviction of assault and battery but reversed his
conviction of breaking and entering a dwelling house in
the nighttime with intent to commit a felony. G. L. c. 266,
§ 15. *Commonwealth v. Kingsbury*, 7 Mass. App. Ct. 51
(1979).[1] We granted the parties' cross-applications for fur-
ther appellate review.

---

[1] The Appeals Court remanded the case to the Superior Court for

Without further comment, we agree with the Appeals Court on the issues as to which the defendant has sought further appellate review. We disagree, however, with the Appeals Court's conclusion on the issue as to which the Commonwealth has sought further appellate review: that the defendant's conviction under G. L. c. 266, § 15, should be reversed due to the absence of any evidence that the crime occurred in the nighttime. We reject the defendant's further argument that there was no evidence that the apartment he broke into was a dwelling house. We, therefore, affirm both judgments.

1. The Appeals Court concluded that the defendant's motion for a directed verdict should have been allowed because the evidence did not warrant a finding that the breaking and entering occurred in the "night time" as required by G. L. c. 266, § 15. 7 Mass. App. Ct. at 55. Section 10 of G. L. c. 278 defines "night time" as "the time between one hour after sunset on one day and one hour before sunrise on the next day." The Appeals Court viewed the Commonwealth's evidence as showing "the break-in to have occurred sometime between the hours of 6:00 P.M. and 7:00 P.M." on October 31, 1975. 7 Mass. App. Ct. at 55. There was no evidence as to the precise time of sunset on that day. The Appeals Court concluded that it could not "be said to be a matter of common knowledge that one hour after sunset on October 31, 1975, fell before 6:00 P.M." *Id.* This statement assumes that the jury had to conclude that the break-in occurred at 6 P.M.

In considering the denial of the motion for a directed verdict, we must decide whether there was enough evidence concerning the time of sunset on October 31 to satisfy a rational trier of fact beyond a reasonable doubt that the sun had set more than one hour before the com-

resentencing under G. L. c. 266, § 18, for breaking and entering a "building" in the daytime. *Commonwealth* v. *Kingsbury*, 7 Mass. App. Ct. 51, 56 (1979). There is no statutory crime of breaking and entering a *dwelling house* in the day time.

mission of the crime. *Commonwealth* v. *Latimore, ante*
671, 676-679 (1979). Jurors are entitled to rely on their
general knowledge of matters commonly known within
the community. See, e.g., *Commonwealth* v. *Fitzgerald,*
376 Mass. 402, 420 (1978) (atmosphere of fear in housing
projects); *Commonwealth* v. *McColl,* 375 Mass. 316, 323
(1978) (not all criminals are insane); *Commonwealth* v.
*707 Main Corp.,* 371 Mass. 374, 384 (1976) (views of aver-
age people in the community as an appropriate norm for
deciding if a matter "appeals to prurient interest");
*Crowe* v. *Ward,* 363 Mass. 85, 90 (1973) (weather phenom-
ena).

The Commonwealth introduced evidence of the date
and time of the break-in and evidence that it occurred
after dark. We note the special circumstance that the
break-in occurred on Halloween, a day on which the time
of the arrival of darkness is given particular attention.
Based on evidence presented at trial and on their com-
mon knowledge, the jurors could have concluded beyond
a reasonable doubt that the break-in occurred more than
an hour after sunset.

The evidence presented by the Commonwealth showed
that the break-in took place sometime after 6 P.M., proba-
bly no earlier than 6:15 P.M., and no later than 7:10 P.M.
The evidence most favorable to the Commonwealth on
the nighttime issue was that the break-in occurred at 7:10
P.M., not 6 P.M., as the Appeals Court assumed. There was
evidence of the degree of darkness in the apartment. One
witness testified that the defendant told him not to turn
on the lights. Another testified that it was dark and that,
when he turned on the lights, the defendant turned them
off. He also testified that he could see across the room
only when cars went by with their headlights on.

The jury were permitted to rely on their common
knowledge that October 31 falls approximately halfway
between the autumnal equinox and the winter solstice
and that daylight saving time was not in effect on October
31, 1975. The jurors certainly had a general idea of the

hour of sunset on Halloween, a night when neighborhood children traditionally have engaged in a mild form of extortion known as "trick or treat."

Taking the evidence most favorable to the Commonwealth, and recognizing that a jury may use their general knowledge in determining what inferences may be drawn to establish a material fact not proved by direct evidence, we conclude that the case was properly submitted to the jury. The evidence warranted a conclusion beyond a reasonable doubt that the break-in occurred after 7 P.M. and that the sun had set more than one hour before. In fact, the jury would have been warranted in inferring that the sun had set considerably earlier than 6 P.M. The Appeals Court took the evidence least favorable to the Commonwealth when it disregarded the evidence of darkness, fixed the time of the break-in at 6 P.M., and concluded that the jury could not determine, as a matter of common knowledge, that the sun had set more than an hour before that.

In view of what we have said, it is not necessary to answer the Commonwealth's argument that we should fill in the missing direct proof, or treat its omission as harmless error, by taking judicial notice that the sun set at approximately 4:40 P.M. E.S.T. on October 31, 1975. We note that some courts have taken judicial notice of the time of sunset to uphold burglary convictions. See, e.g., *Mitchell* v. *State*, 549 P.2d 96, 100 (Okla. Crim. App. 1976); *Parish* v. *State*, 523 S.W.2d 665, 666 (Tex. Crim. App. 1975). See generally Annot., 82 A.L.R.2d 643 (1962). Of course, courts may notice matters of common knowledge (e.g., *Commonwealth* v. *Crehan*, 345 Mass. 609, 611 [1963] [circulation of major newspapers in Boston area]) and matters verifiable by authoritative sources (e.g., *Commonwealth* v. *Whynaught*, 377 Mass. 14, 17-18 [1979] [accuracy of radar]). See K. B. Hughes, Evidence § 71 (1961); W. B. Leach & P. J. Liacos, Massachusetts Evidence 34-39 (4th ed. 1967). The right of a court to take judicial notice of subjects of common knowledge is sub-

stantially the same as the right of jurors to rely on their common knowledge. See 9 J. Wigmore, Evidence § 2570, at 542 (3d ed. 1940). However, proof of an essential element of a crime should not be supplied by judicial notice taken at the appellate level.[2] *United States* v. *Jones,* 580 F.2d 219, 223-224 (6th Cir. 1978). The proper practice in a criminal trial is to submit all factual issues to the jury, including matters of which the judge may take judicial notice. See Fed. R. Evid. 201(g) (jury in a criminal trial not bound by fact judicially noticed); *United States* v. *Jones, supra.*[3] Such a submission was made in this case. The jury were left to decide, based on the evidence, reasonable inferences, and matters of common knowledge, whether the break-in occurred more than one hour after sunset. Judicial notice as to the precise time of sunset was neither sought nor taken at the trial level. We would not supplement the Commonwealth's proof on appeal by taking judicial notice of a fact not submitted to the jury.

2. The defendant argues that the evidence did not warrant a finding that he broke into a "dwelling house." The Appeals Court did not reach this question because it concluded that the evidence did not warrant a finding that the break-in occurred in the nighttime. The defendant does not challenge the basic proposition that an apartment may be a dwelling house under G. L. c. 266, § 15. See

---

[2] The time of sunset is not technically an element of the crime of burglary. The prosecution must prove not simply the time of sunset but that the break-in occurred one hour or more after sunset. The time of sunset is so closely related to the element of "night time," however, that taking judicial notice of it would, in many cases, supply a missing link in the Commonwealth's proof of an essential element.

[3] The proposed Rules of Evidence for Massachusetts Courts, Article II, Judicial Notice, Rule 201, Judicial Notice of Adjudicative Facts, states in clause (g): "In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." The Advisors' Notes state that the committee elected to follow the Federal Rule, commenting that "[t]he committee felt that to instruct a jury in a criminal case to accept as conclusive any fact judicially noticed is inappropriate as it would be contrary to the spirit of the Sixth Amendment right to a jury trial."

R.A. Anderson, Wharton's Criminal Law and Procedure § 423, at 45 (1957 & Supp. 1979); W.R. LaFave & A. W. Scott, Jr., Criminal Law § 96, at 712 (1972); R. Perkins, Criminal Law 201 (2d ed. 1969). He argues that the apartment in question was not a dwelling house at the time of the break-in because it had no furniture or other personal property in it and no one was actually living in it. There is no statutory definition of "dwelling house" as used in G. L. c. 266, § 15.

The evidence warranted the jury in finding the following facts. A previous tenant had moved out of the apartment on October 25. The new tenants had not moved their belongings in, although they had paid a deposit by October 31. The apartment had been repainted between October 25 and October 31. The new tenants took possession of the premises on October 28 and had permission to move in at that time. They had a key to the apartment, and it was they and a friend who found the defendant and others in the apartment on the evening of October 31. These tenants intended to live in the apartment, and one of them testified that he "lived" in the apartment on October 31, 1975.

The question before us has not often been considered by courts, presumably because a place for human habitation neither occupied nor furnished presents limited opportunities for the commission of a felony following a break-in.[4] If a tenant has leased previously occupied premises and has moved in items of personal property, even though he has never spent a night there, those premises have been held to be a dwelling house, defined by statute as "any building of which any part has usually been occupied by any person lodging therein at night." *State* v. *Matson*, 3 Or. App. 518, 519 (1970). See *Commonwealth* v. *Brown*, 3 Rawle 207 (Pa. 1832). An unoccupied but furnished summer home to which its owner intends to re-

---

[4] In the case before us, the defendant took a young boy to the apartment with the intent to commit an indecent assault.

turn has been held to be an "inhabited dwelling house."
*State* v. *Lisiewski*, 20 Ohio St. 2d 20 (1969) (5-2 decision).
On the other hand, where a statute defined a dwelling
house as inhabited if a person resided therein, even if it
was temporarily unoccupied, an unoccupied apartment
that had been rented for occupancy to begin after the date
of the break-in was not "inhabited" because it was no
one's residence in the interim. *People* v. *Valdez*, 203 Cal.
App. 2d 559, 563 (1962). An apartment used for a purpose
other than habitation is not a dwelling house. *Poff* v.
*State*, 4 Md. App. 186, 189 (1967). An intention to rent a
building as a dwelling at some future time does not make
it a dwelling house. See *Marston* v. *State*, 9 Md. App. 360,
363-364 (1969).

In this case, the new tenants had taken possession of
the apartment with an intention to live there. They had
a right of access and a right to move in at the time of the
break-in. One tenant testified that he regarded the apart-
ment as his place of residence. In fact, it was the tenants
who confronted the defendant in the apartment. We need
not decide whether an apartment between tenancies is a
"dwelling house" under G. L. c. 266, § 15,[5] because the
jury could have found beyond a reasonable doubt that the
new tenancy had commenced. The absence of any person-
al property from the apartment is not dispositive.

*Judgments of the Superior
Court affirmed.*

---

[5] In *Commonwealth* v. *Barney*, 10 Cush. 478 (1852), we held that the
evidence did not support a charge of burning the dwelling house of one
Wheaton because the owner had never occupied the building as a
residence and the building had been unoccupied by anyone for many
months. We noted that "the dwelling-house burnt must be an occupied
house; a dwelling-house in which some one lives, using the term in a
liberal sense, and treating the cases of mere temporary absence as
substantially a continued occupation." *Id.* at 480. The statutory lan-
guage concerning arson of a dwelling house now includes the words
"occupied or unoccupied." G. L. c. 266, § 1, as amended through
St. 1974, c. 281, § 1. See *Commonwealth* v. *Murphy*, 1 Mass. App. Ct.
71, 75 (1973).