David Thomas COHRON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2007–SC–000483–MR.

Supreme Court of Kentucky.

March 18, 2010.

Daniel T. Goyette, Louisville Metro Public Defender, Elizabeth B. McMahon Assistant Public Defender, Office of the Jefferson District Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, David Bryan Abner, Assistant Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

David Thomas Cohron appeals his convictions for first-degree fleeing and evading, first-degree wanton endangerment, receiving stolen property over $300, two counts of second-degree escape, fourth-degree assault, reckless driving, and being a first-degree persistent felony offender (PFO 1). He argues that the trial court abused its discretion when it consolidated all the charges for trial. Cohron also argues he was entitled to a lesser included offense instruction for third-degree escape after the Commonwealth failed to establish that he had been charged with felony offenses at the time of that escape. We reverse one of Cohron's two second-degree escape convictions and remand for further proceedings but affirm Cohron's other convictions.

## I. *FACTUAL AND PROCEDURAL HISTORY.*

Cohron was an inmate on a work release program; and he failed to return at the designated time on May 28, 2006. Consequently, a warrant issued for his arrest for escape.

After completing her shift on June 9, 2006, Officer Holt was driving home in her police vehicle when she observed a vehicle traveling on the freeway in the wrong direction and headed directly toward her. Officer Holt was able to avoid the vehicle and gave chase. The vehicle traveled at speeds up to 90 mph, and Officer Holt lost sight of it at a small rise in the road but soon came upon it after it had wrecked.

Cohron was alone in the wrecked vehicle. He was lying on the passenger side with his feet under the car's pedals. At first, he appeared to be unconscious and unresponsive. Other officers arrived at the scene. They scoured the area, but no other person was found at the scene. Officer Elder approached Cohron in the car and found him to be lucid and able to communicate. Cohron stated that someone else had been driving.

Marijuana and a metal pipe containing drug residue were found in the vehicle. The police determined that the vehicle had been reported stolen.

Cohron had a suspected neck injury so he was transported by ambulance to the hospital. He became agitated and confused once at the hospital, and a doctor ordered that he be sedated. While the medication was being administered, Cohron repeatedly struck an emergency room technician, Michael Fischer, injuring Fischer's arm and neck.

Three days later, on June 12, Cohron was ready to be released from the hospital. He was in police custody, having been charged as a result of the events of June 9; and Officer Link was sent to transport him. Cohron was handcuffed and placed in a wheelchair to be taken to Link's police cruiser. In the hospital parking lot, Cohron got out of the wheelchair and fled. Officer Link and hospital security guards chased him into a parking lot across the street. Cohron was recaptured by a security officer as he attempted to scale a chain-link fence. The security officer injured his knee during the recapture.

Cohron was charged in two indictments. Count Seven of the first indictment charged escape in the second degree on May 28 when Cohron was an inmate at a corrections center. Counts Two, Three, Four, Nine, Ten, and Eleven covered conduct allegedly occurring on June 9 and consisted of charges of first-degree wanton endangerment, receiving stolen property over $300, first-degree fleeing or evading police, possession of marijuana, possession of drug paraphernalia, and reckless driving. Count One of the first indictment charged Cohron with the June 9 second-

degree assault of Michael Fischer, the ER technician. Counts Five, Six, and Eight concerned the June 12 events and charged Cohron with first-degree fleeing or evading police, third-degree assault (of the security officer), and escape in the second degree. The second indictment charged Cohron with being a PFO 1.

Cohron filed a motion to sever the counts of the first indictment. He contended that trying all the offenses together would unfairly prejudice him; he also argued they might involve inconsistent defenses. He noted that the witnesses did not overlap as to the separate incidents. He further asserted that the Commonwealth would gain an advantage by the sheer number of charges. He asked for three separate trials based upon the three separate dates set forth in the indictment.

Following a hearing, the trial court held that the incidents of June 9 and June 12 should be tried together but that it would bifurcate the guilt phase of the trial and allow the escape charge from May 28 to be tried separately to the same jury. Cohron continued to object to the arrangement. But the case was tried in that manner.

The trial court directed a verdict of acquittal on the second-degree assault charge and the third-degree assault charge and instructed the jury on the lesser included offense of fourth-degree assault on each charge. The jury acquitted Cohron of assault regarding the security officer, possession of marijuana, and possession of drug paraphernalia. The jury convicted Cohron of reckless driving,

fourth-degree assault of Fischer, first-degree wanton endangerment, receiving stolen property valued over $300, first-degree fleeing or evading police, second-degree fleeing or evading police, two counts of second-degree escape, and of being a PFO 1. Cohron received a forty-year sentence. He then filed this appeal as a matter of right.[1]

## II. THE TRIAL COURT'S BIFUR-CATION IS HARMLESS ERROR.

Kentucky Rules of Criminal Procedure (RCr) 6.18 permits joinder of offenses in a single indictment if the offenses are (1) of the same or similar character or (2) based on the same acts or transactions connected together or constituting parts of a common scheme or plan. But RCr 9.16 permits a court to order separate trials of the counts of an indictment upon motion and a showing of prejudice. RCr 9.16 applies when the requirements of RCr 6.18 are satisfied in that joinder could be proper but would be prejudicial.[2]

The trial court has broad discretion with respect to joinder and will not be overturned in the absence of a showing of prejudice and a clear abuse of discretion.[3] A criminal defendant is not entitled to severance unless he positively shows prior to trial that joinder would be unduly prejudicial.[4] "Offenses closely related in character, circumstances[,] and time need not be severed."[5] If evidence from one of the offenses joined in the indictment would be admissible in a separate trial of the other offenses, the joinder of offenses generally will not be prejudicial.[6] Additionally, con-

1. Ky. Const. § 110(2)(b).

2. *Sebastian v. Commonwealth*, 623 S.W.2d 880, 881 (Ky.1981).

3. *Sherley v. Commonwealth*, 889 S.W.2d 794, 800 (Ky.1994).

4. *Humphrey v. Commonwealth*, 836 S.W.2d 865, 868 (Ky.1992).

5. *Sherley*, 889 S.W.2d at 800.

6. *Spencer v. Commonwealth*, 554 S.W.2d 355, 357 (Ky.1977).

siderations of judicial economy and the efficiency of avoiding multiple trials are reasons for joint trials.[7]

Cohron argues that the incidents of May 28, June 9, and June 12 were completely separate incidents occurring on different days; and the trial court erred in not severing them. Evidence from one incident, he argues, would not have been admissible in a separate trial of the other incidents. He argues they were not inextricably interconnected since it was not necessary to know that Cohron had escaped from a correctional facility before learning of the reckless driving incident in the stolen car or to know the events that led him to be taken to the hospital from which he fled the police. He claims that it was possible for the Commonwealth to show that Cohron was charged with felonies at the time of the June 12 escape without detailing the specific charges of June 9 or the underlying events.

The trial court ordered the June 9 and June 12 incidents to be tried together because the events of the reckless driving, car accident, and drug charges helped to explain Cohron's state of mind at the hospital. We do not observe a clear abuse of the trial court's discretion. The trial court concluded that the June 9 and 12 incidents could not be separated because the events of June 9 explained why Cohron was in the hospital from which he escaped. So these offenses were sufficiently connected as a series of events. The trial court did not abuse its discretion by trying them together. Instead, as a matter of judicial economy, it made sense to try these offenses all at once. Most importantly, Cohron did not identify specific prejudice from trying these charges together.

■ The May 28 escape charge is more problematic. The trial court decided to separate the May 28 escape charge and try it separately to the same jury after it had rendered a verdict on the other offenses.

We are aware of no other case tried in this manner. We must conclude the decision of the trial court to attempt to bifurcate the May 28 escape offense was an implicit determination that a joint trial that included that charge would be prejudicial. But the trial court's novel solution—trying the May 28 escape charge to the same jury after that jury had already rendered a verdict on the other charges—did not serve to lessen the perceived prejudice. Here, the bifurcated charge was tried to the same jury. The result was that the jury was presented with collective proof of escapes that is the very ill that the trial court was presumably attempting to avoid. So we conclude the trial court's novel partial severance of the May 28 charge was improper. But we also conclude that impropriety was, at most, a harmless error since the May 28 offenses could have been joined with the June 9 and June 12 offenses.

■ RCr 9.24 provides that we are to "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." We do not believe the unusual procedural method used by the trial court affected Cohron's substantial rights because the May 28 escape charge could have been joined with the June 9 and June 12 charges. More specifically, the May 28 escape charge could have provided a motive for Cohron's conduct that followed on June 9 and June 12.[8]

7. *Brown v. Commonwealth,* 458 S.W.2d 444, 447 (Ky.1970).

8. *See, e.g., Ringstaff v. Commonwealth,* 275 S.W.2d 946, 949–50 (Ky.1955) ("Evidence of other crimes is competent when it tends to establish identity, or knowledge of guilt, or intent or motive for the commission of the crime under trial....").

Under Kentucky Rules of Evidence (KRE) 404(b), evidence of other crimes or wrongs is admissible to prove, among other things, motive. It is certainly reasonable to conclude that Cohron's May 28 escape provided a motive for him to flee or escape from custody on June 9 and June 12. So the fact that the trial court's unusual procedural methodology had the net result of permitting the same jury to hear evidence of the May 28 charge after it had already heard evidence of the June 9 and June 12 charges and rendered a verdict on those charges did not affect Cohron's substantial rights. In other words, the trial court's attempted bifurcation was procedurally improper; but that impropriety is of no real moment since the same jury should have heard evidence of all of Cohron's charges all along in order to present the jury with a complete picture of Cohron's actions. Accordingly, we conclude that Cohron was not unduly prejudiced by the trial court's improper attempted bifurcation of the May 28 charge.[9]

## III. *THE LACK OF EVIDENCE THAT COHRON HAD BEEN CHARGED WITH FELONIES NECESSITATES REVERSAL OF THE JUNE 12 ESCAPE CONVICTION.*

■ Cohron argues that the trial court was required to instruct on third-degree escape on the June 12 escape charge because the Commonwealth failed to establish that he had been charged with a felony at the time of his escape from custody at the hospital.[10] Second-degree escape requires that the jury find as an element of the offense that the defendant was charged with or convicted of a felony at the time he escapes from custody.[11] The instruction given by the trial court stated that the defendant was guilty only if the jury found beyond a reasonable doubt: "[t]hat at the time of his escape, the defendant had been charged with certain felonies." So the felonies were not detailed for the jury as they should have been.[12]

Cohron argues that the Commonwealth never met its burden of proof since Officer Elder only testified that Cohron had been charged before the escape, but Officer Elder's testimony did not specify that the charges were felonies. Indeed, Officer Elder testified only that he had taken out charges against Cohron regarding the events of June 9. He did not specifically testify as to whether those charges were felonies. As a result, Cohron argues the jury should have been instructed on the lesser included offense of third-degree escape, which requires a finding that the defendant escaped from the custody of a public servant under a lawful detention, arrest, or order of the court for law enforcement purposes, but not that the defendant was charged with or convicted of a felony.[13]

The trial court ruled that because the offenses for which Cohron could have been charged on June 9 were "pretty serious charges," the jury could believe that he had been charged with a felony. We disagree.

■ Since it bore the burden of proof, the Commonwealth had the responsibility

9. *Spencer,* 554 S.W.2d at 357 (holding that usually not prejudicial to join offenses when evidence of one offense would be admissible in evidence at trial of other offense).

10. Cohron does not argue that he was entitled to an instruction on third-degree escape as to the May 28 escape charge.

11. Kentucky Revised Statutes (KRS) 520.030.

12. *See* 1 COOPER, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) § 7.27 (5th ed. 2006).

13. KRS 520.010(2) (defining *custody* ); KRS 520.040.

to present evidence of the fact that Cohron was in custody on June 12 on a charge or conviction of a felony offense. Since this is what separates second-degree escape from third-degree escape, the fact that Cohron had been charged with felonies at the time of the June 12 escape was an element that had to be proved beyond a reasonable doubt. Because there was a total absence of evidence of that element, the jury could only surmise what the June 9 charges were.

We do not believe it is obvious to an average person what charges are felonies and what are misdemeanors, particularly when the offenses charged were not specifically enumerated for the jury. We also disagree with the trial court's conclusion that a lesser included instruction was not proper because Cohron could have been charged with serious offenses. The proper question is what offenses Cohron was actually charged with, not what theoretical charges may have been supported by the evidence. Since the jury was not specifically informed of the felonious nature of Cohron's June 9 charges, he was entitled to an instruction on a lesser included offense; and the trial court's failure to so instruct the jury was error.

We find *Shavers v. Commonwealth*,[14] cited by the Commonwealth, to be distinguishable. In *Shavers*, the Commonwealth established that the substance in which the defendant was accused of trafficking was heroin; but it did not introduce evidence that the drug at issue was a

Schedule I or II controlled substance. This Court affirmed the conviction because there was no question under the law that the drug at issue was a Schedule I controlled substance.[15] *Shavers* differs from the case at hand in that the witness testified to everything one needed to know to determine that the offense was a Schedule I controlled substance. In the present case, the officer did not testify to what the June 9 charges were; and so we cannot say enough information was adduced to show that Cohron was charged with felonies.

■ Additionally, we are not persuaded by the Commonwealth's argument that the trial court took judicial notice of the level of the offense. First, the trial court was never actually asked to take judicial notice. Next, it is not for this Court to accept the evidence as having been established by means of judicial notice. Proof of an essential element of a crime should not be supplied by judicial notice taken at the appellate level.[16] Third, the felonious nature of the June 9 charges was an element of the offense of escape in the second degree. It was necessary for the jury to have evidence on this element to find guilt beyond a reasonable doubt.[17]

■ We are aware that any error that does not affect the substantial rights of the defendant is deemed a harmless error.[18] And even erroneous jury instructions may sometimes be deemed a harmless error.[19] But we also "adhere to the

---

14. 514 S.W.2d 883 (Ky.1974).

15. *Id.* at 885.

16. *United States v. Jones*, 580 F.2d 219, 224 (6th Cir.1978) (*construing* Federal Rules of Evidence 201); *Commonwealth v. Kingsbury*, 378 Mass. 751, 393 N.E.2d 391, 393–94 (1979).

17. *See* KRS 500.070(1) ("The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt...").

18. RCr 9.24.

19. *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky.2008).

presumption of prejudice inherent in an erroneous [jury] instruction. . . ."[20]

 The Commonwealth contends that any error here was harmless because the record reflects that Cohron was, in fact, in custody with felony charges on June 12. So the Commonwealth contends Cohron's substantive rights were not affected because there is no substantial possibility that the result would have been different without the error. But the Commonwealth's argument is not premised upon our current harmless error standard. Instead, a non-constitutional error is harmless if a "reviewing court can say with fair assurance that the judgment was not substantially swayed by the error."[21] Certainly, there is at least a "grave doubt" about whether the Commonwealth's failure to present evidence of a crucial element of the second-degree escape charge contributed to Cohron's conviction for that charge.[22] In other words, the Commonwealth's failure to present any evidence regarding an element of an offense was a serious error that should have resulted in the jury being instructed *only* on third-degree escape. So Cohron's conviction for second-degree escape for the events of June 12 must be reversed. The question then becomes whether Cohron may be re-tried for the June 12 second-degree escape charge or whether a retrial on that charge violates the proscription against double jeopardy.

## IV. RETRIAL OF THE JUNE 12 SECOND–DEGREE ESCAPE CHARGE BARRED BY DOUBLE JEOPARDY.

 Generally, the double jeopardy clause does not bar retrial after reversal of a criminal conviction.[23] But retrial is barred if an appellate court has found there was insufficient evidence to support the conviction.[24] In the case at hand, although Cohron has couched his argument only in terms of stating that the trial court erred by failing to instruct on third-degree escape, the actual crux of his argument centers around the fact that the Commonwealth failed to offer proof to the jury that Cohron had been charged with felony offenses at the time of the June 12 escape.[25]

As discussed above, we agree with Cohron that the Commonwealth did fail to present the proof necessary to convict Cohron of second-degree escape. Because we have reversed Cohron's second-degree escape conviction for a lack of evidence to support that conviction, retrial on that charge would constitute impermissible double jeopardy. We recognize that the Commonwealth could have presented evidence that Cohron had been charged with

---

**20.** *Id.*

**21.** *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky.2009).

**22.** *Id. (quoting Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) ("The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' ").

**23.** *Couch v. Maricle*, 998 S.W.2d 469, 471 (Ky.1999).

**24.** *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."); *Couch*, 998 S.W.2d at 471.

**25.** It is well settled that a claim of double jeopardy may be addressed on appeal even if insufficiently preserved. *See, e.g., Dixon v. Commonwealth*, 263 S.W.3d 583, 593 n. 50 (Ky.2008).

felonies at the time of the June 12 escape. But the focus is upon the evidence that was presented and not upon the evidence that could have been presented. On remand, Cohron may only be tried for third-degree escape, not second-degree escape.[26]

## V. CONCLUSION.

For the foregoing reasons, we reverse Cohron's conviction for second-degree escape, which occurred on June 12, and remand for further proceedings consistent with this opinion. All of Cohron's other convictions are affirmed.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur.

SCOTT, J., concurs, in part, and dissents, in part, by separate opinion.

SCOTT, J., Concurring, in Part, and Dissenting, in Part:

Although I concur with the majority's conclusion that the bifurcation of the May 28, 2006, charge of second-degree escape was unnecessary and thus harmless, I must respectfully dissent from the further conclusions that (1) there was insufficient evidence to support the fact that Appellant had been charged with a felony prior to the June 12, 2006, escape, and (2) that

such a failure—in the face of the uncontested previous felony charges of May 28 and June 9, 2006—was not harmless error, at least in view of the fact that the *same* jury was purposely held over to try the guilt phase of the preceding escape charge of May 28, 2006, upon which Appellant was also convicted.

Appellant, then an inmate, escaped from a Jefferson County work release program on May 28, 2006. Appellant was charged with second-degree escape, a class D felony, that same day; and a warrant was issued for his arrest. He was apprehended on June 9, 2006, after a dangerous car chase that resulted in his wrecking the stolen vehicle. Due to the injuries sustained in the accident, he was taken to the hospital and placed under guard.[1] During his admission, he was belligerent and abusive and struck an emergency room technician on several occasions. Three days later, on June 12, 2006, as he was being discharged from the hospital under guard, Appellant broke away from custody and was again apprehended. A hospital security officer was hurt during the apprehension.

Thereafter, in August of 2006, Appellant was indicted by the Jefferson County Grand Jury for the eleven (11) offenses

---

**26.** Although the United States Supreme Court has not ruled upon this precise issue, at least three federal appellate courts have determined that it is permissible for a defendant to be retried for a lesser included offense on remand after an appellate court has determined that there was insufficient evidence to support the jury's decision to convict a defendant of a greater offense. *Anderson v. Mullin,* 327 F.3d 1148, 1154–58 (10th Cir.2003) (permitting retrial on lesser included offense and citing and relying upon *Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988) and *Shute v. Texas,* 117 F.3d 233 (5th Cir.1997)). Although we did not discuss the issue in detail, we have ruled before today, at least as it pertains to PFO charges, in accordance with the aforementioned federal courts' conclusion that a

retrial on a lesser included offense is permissible if an appellate court determines that there was insufficient evidence to support a guilty verdict on the greater offense. *White v. Commonwealth,* 770 S.W.2d 222, 223 (Ky. 1989) ("Here there was insufficient evidence of PFO I but sufficient evidence and a finding of guilt on all the elements of PFO II. Therefore, a retrial would not be barred by double jeopardy.").

**1.** Appellant was charged under uniform citation with first-degree wanton endangerment, first-degree fleeing and evading (in a motor vehicle), and receiving stolen property over $300, along with several misdemeanors.

occurring on the three (3) dates: May 28, June 9, and June 12, 2006. The May 28th charges involved the second-degree escape charge; and the June 9th charges involved four (4) felony charges: second-degree assault on the emergency room technician, first-degree wanton endangerment for dangerous driving during the car chase, receiving stolen property over $300 for possession of the stolen car, as well as first-degree fleeing and evading police in a motor vehicle. The June 12th charges included three (3) felony charges: first-degree fleeing and evading police (as a pedestrian), third-degree assault during which the security officer at the hospital suffered injury, and second-degree escape. A subsequent grand jury indictment charged Appellant with being a first-degree persistent felony offender.

All of the charges against Appellant were tried before a Jefferson Circuit Court jury from April 2–5, 2007. The guilt phase of all the charges, excepting the May 28, 2006, initial escape charge, was completed on April 4, 2007—the jury heard the guilt phase of the May 28, 2006, escape charge the next day, on April 5, 2007. That afternoon, the same jury completed the penalty phase of *all* the charges, including finding that Appellant was a persistent felony offender in the first degree.

In addition to finding Appellant guilty of the separate second-degree escape charges (May 28 and June 12, 2006), the jury found him guilty of three (3) additional felonies on June 9, 2006—*i.e.*, first-degree wanton endangerment, receiving stolen property over $300, and fleeing or evading police in a motor vehicle. As a result, Appellant was sentenced to a term of forty (40) years, with each of the escape charges counting for ten (10) years each, each of which ran consecutive to the other and consecutive to

the twenty-year sentence for the other felony charges.

On appeal, Appellant seeks two things. First, he asks that this Court reverse his convictions due to the trial court's denial of his motions to sever the various counts according to the dates on which they were committed. Secondly, he asks that his conviction for the second-degree escape of June 12, 2006, from the hospital be reversed because he was "entitled to an instruction regarding escape in the third degree because the jury might have had a reasonable doubt that he was charged with a felony at the time he allegedly escaped . . . and yet believed he was guilty of the lesser offense of escape in the third degree." [2] As aforementioned, I agree with the majority on the issue of severance.

As to the second issue, the trial court denied the requested instruction, concluding: "under the facts and circumstances it was pretty clear that [Appellant] was in custody and it was pretty serious charges when you're driving down the expressway at 90–plus miles per hour going the wrong way." Moreover, evidence was introduced that the car he was driving had been stolen from a construction site in Louisville where it had been parked and locked. In addition, Officer Link testified that Appellant was handcuffed and in custody at the time he escaped from the hospital; and Officer Elder testified that he filed charges against Appellant regarding the June 9, 2006, events, which involved the dangerous car chase and wreck in the stolen vehicle.

Thus, it was clear from the evidence before the jury that at the time of his escape from custody on June 12, 2006, Appellant had been charged with a felony—in fact, several felonies, all from May

---

**2.** Even Appellant did not assert that the evidence was insufficient to support the charge,

*i.e.*, that he was charged with a felony at the time.

28 and June 9, 2006.[3] Even the fact of fleeing custody is an evidentiary reflection upon the seriousness of the offense for which the defendant was held.

In *Shavers v. Commonwealth*, 514 S.W.2d 883, 885 (Ky.1974), the appellant argued that his conviction for selling narcotics should be overturned because the Commonwealth did not put on evidence that heroin was a Schedule I or Schedule II controlled substance as required by the statute prohibiting the sell of heroin or other similarly classed drugs. The court rejected his argument, pointing out that there was no question that the drug sold was heroin. The court then acknowledged, "[h]eroin is listed in KRS 218A.050(2) as a Schedule I controlled substance and is defined as a 'narcotic drug' in KRS 218A.010(a)." *Id.* at 885. The court thus concluded that the jury was properly instructed. If nothing else, *Shavers*, properly reflects the view that such a "technical" error—in the face of uncontroverted facts proving the point—is harmless error. *Cf. id.* at 885.

"A person is guilty of escape in the second[ ]degree when he escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody." KRS 520.030(1). A person is guilty of escape in the third degree when "he escapes from custody." KRS 520.040(1). Escape in the second degree is a Class D felony, while escape in the third degree is a Class B misdemeanor. Thus, the only question here is whether or not Appellant had been "charged with or convicted of a felony" at the time of the escape. KRS 520.030(1).

A "felony" is defined as "an offense for which a sentence to a term of imprisonment of at least one (1) year of custody of

the Department of Corrections may be imposed." KRS 500.080(5). It is also a word used commonly in the English language, where it has been defined as a "crime, as murder, rape, or burglary, considered more serious than a misdemeanor and punishable by a stronger sentence." WEBSTERS II NEW COLLEGE DICTIONARY 420 (3rd ed. 2005). Consequently, it is not a word that the American public is unfamiliar with.

Moreover, "felony" is not an instructional word that needs or receives defining through jury instructions. In fact, as a general rule, the jury is not presented with the question of whether or not the particular charge or charges existing prior to the escape are felonies but whether or not Appellant, at the time of the escape, had been charged with a designated crime. *See* 1 COOPER, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) § 7.27 (4th ed. 1999) ("[T]hat at the time of his escape, the defendant had been [charged with] [convicted of] the crime of _____ (ID felony offense")); 1 COOPER, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) § 7.27 (5th ed. 2006) ("[T]hat at the time of his escape, the defendant had been [charged with] [convicted of] the crime of _____ (ID felony offense")). In the case at hand, the jury was instructed: "that at the time of his escape the defendant had been charged with certain felonies."

Here, Appellant *had been* charged with (and the jury convicted him of) three (3) separate felonies from June 9, 2006, as well as the escape on May 28, 2006, for which he was charged on May 28, 2006. Moreover, it is undisputed that Appellant had been charged with four (4) felonies,

---

**3.** As an aside, consider how many people, if asked, would say that "car theft" is a minor

(misdemeanor) offense.

*prior* to his escape on June 12, 2006. He was convicted of every one.

And why shouldn't he have been? Officer Link testified that Appellant was handcuffed and in custody at the time of the escape on June 12, 2006. Officer Elder testified that he filed charges against Appellant regarding the events of June 9, 2006—the night of the high-speed car chase on the freeway in the stolen vehicle and the resulting wreck. As the trial court noted, these were indeed "serious charges." A "serious charge" to any lay person would, in most instances, call to mind a criminal charge that would result in a penitentiary sentence. One may be sent to the penitentiary *only* for a felony, not a misdemeanor.

"A defendant is entitled to a directed verdict, drawing all reasonable inferences in favor of the Commonwealth, only 'if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt....'" *Crossland v. Commonwealth,* 291 S.W.3d 223, 235 (Ky.2009) (*citing Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991)); *see also Bussell v. Commonwealth,* 882 S.W.2d 111, 114 (Ky.1994). Moreover, "circumstantial evidence may form the basis for a conviction so as long as the evidence is sufficient to convince a reasonable jury of guilt." *Id.* (citing *Davis v. Commonwealth,* 147 S.W.3d 709, 729 (Ky.2004)).

The test of whether circumstantial evidence is sufficient to support proof of a fact is whether it "is sufficient to create a reasonable inference" that the fact exists. *See Moody v. Commonwealth,* 170 S.W.3d 393, 397 (Ky.2005) (circumstantial evidence of age of the defendant at the time of the commission of the offense); *Martin v. Commonwealth,* 13 S.W.3d 232, 235 (Ky. 1999) (circumstantial evidence of whether sentence, or parole or probation was completed within five (5) years of a new charge

for PFO purposes); *Dawson v. Commonwealth,* 756 S.W.2d 935, 936 (Ky.1988) (circumstances of possession sufficient proof that controlled substances were possessed for sale). The test then is "between a reasonable inference and 'guess work'":

> An inference is the act performed by the jury of inferring or reaching a conclusion from facts or premises in a logical manner so as to reach a conclusion. A reasonable inference is one in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess. It is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven. Guesswork, on the other hand, is the process of making a judgment without adequate information, or to conjecture, or to speculate.

*Martin,* 13 S.W.3d at 235.

"[A]n inference from circumstantial evidence may vary in strength according to the degree of probability reflected by it, being strong enough in one case to require a directed verdict while in another case having only enough strength to create a jury issue." *Graves v. Commonwealth,* 285 S.W.3d 734 (Ky.2009) (whether a screwdriver could be a burglary tool) (*citing Goss v. Personnel Bd.,* 456 S.W.2d 824, 826 (Ky.1970)).

Thus, given the serious nature of the charges for which Appellant was being tried, the fact that he was under guard and in handcuffs while exiting the hospital where he then fled, and the fact that Officer Elder took out charges against Appellant regarding the serious events of June 9, 2006, it was clearly *not* unreasonable for the jury to find "at the time of his escape [Appellant] had been charged with certain felonies," a fact that—outside of legal arguments—is uncontested.

Thus, this Court should not find that the evidence was insufficient to support the

charge of escape in the second degree on June 12, 2006—an issue, which even Appellant, did not raise or believe in. Appellant only asserted that he "was entitled to an instruction regarding escape in the third[ ]degree because the jury might have had a reasonable doubt that he was charged with a felony at the time he allegedly escaped from Officer Link's custody and believe that he was guilty of the lesser offense of escape in the third[ ]degree." This, too, was precluded by the evidence at hand.

Nor, for the reasons noted, should the Court have addressed the issue as palpable error. "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 *unless such a request is made and briefed by the appellant.*" *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008) (emphasis added). As indicated, no request for insufficiency of the evidence review was made, nor was it briefed.

For the reasons stated above, I respectfully dissent from to the majority's finding the evidence was insufficient, as well as its consequent holding that a retrial on the charge is barred by double jeopardy.