Sterling HOSKINS and Oakley Mullins,
Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 24, 1964.

**840** 

Shumate, Shumate & Flaherty, Irvine, for appellants.

John B. Breckinridge, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Sterling Hoskins and Oakley Mullins appeal from a judgment sentencing each to life imprisonment upon their conviction of being accessories before the fact to a murder committed by one J. C. Willis.

We shall first discuss the contention that the evidence is insufficient to sustain the verdict.

The victim, Carl Winkler, was an elderly, bachelor farmer who lived alone on a farm on a country side road. Around 7:50 p. m. on February 8, 1963, he came on foot to the home of a neighbor, in a wounded condition, and told the neighbor that three masked men had attempted to rob him, there had been a "shoot-out," and two of the men had run away but he thought he had killed the third man. Winkler was taken to a hospital where within a few hours he died without making any further statements.

The body of J. C. Willis was found in the yard of the Winkler home. He had on a mask and a pistol was clasped in his hand.

J. C. Willis owned a 1953 Mercury car. Around 8 p. m. on the night of the killing two witnesses saw a 1953 Mercury driving toward Richmond on the main highway, at a point not far from the entrance to the side road leading to the Winkler home, at a high rate of speed. Another witness had seen a car (unidentified by the witness as to model) parked on the side road a short distance off the main road around 7 p. m. that night. Willis's car was found the next day parked on a street in Richmond. In the glove compartment was a pistol identified by a witness as having belonged to the defendant Mullins, and a pistol box bearing the same serial number as the pistol found in Willis's hand. A witness testified that on a night after the killing (she did not know what night) she saw the defendant Hoskins go to the Willis car (parked on the same street on which it was found after the killing) and remove a package from it. A police officer testified that Hoskins told him he had seen the car parked on the street, the night of the killing, and had looked into it to see whether it was Willis's car.

Hoskins testified that at one time he had owned the pistol found in Willis's hand, but that he had given it to Willis around two weeks before the killing in payment of

wages he owed Willis, who had worked for him.

A witness testified that she saw Hoskins and a man who looked like Mullins (wearing clothes of the same color that Mullins on the following day gave a woman to be laundered) talking with Willis in front of the Willis home around 4:30 p. m. on the day of the killing. Willis left in his car and Hoskins and Mullins left together in a truck.

Another witness said that she saw Hoskins and Willis leave the Willis home together, on foot, around "dusky dark" on the day of the killing.

There was testimony that on the day after the killing Mullins brought a coat and pair of pants to the daughter of a woman with whom he had been keeping company and asked her to wash them thoroughly with clorox and washing powders. The girl said the clothes had what appeared to be blood or oil on them, she couldn't say which. He gave the girl $5.00 for washing the clothes and he displayed several bills of the same and larger denominations.

Three witnesses testified that Mullins told them he did not kill Winkler but "his gun did."

The girl who was asked to do the washing, and her mother, both testified that Mullins demanded of them with threats of bodily harm that they tell anyone who asked, that he had spent the entire night of the killing at their home. The mother further testified that she was supposed to have had a date with Mullins that night but she was unable to find him anywhere.

A policeman testified that Mullins first told him he had spent the night with the woman above mentioned, but later changed his story and said he had stayed in his hotel room the entire evening and night except for taking a short trip by taxi to Hoskins' home. The hotel clerk testified that he had checked Mullins' room several times on the night of the killing and Mullins was not there. The manager of the taxi company testified that there was no record of the claimed taxi trip.

A policeman testified that Hoskins told him he had spent the entire night of the killing at his home, except that around 7:00 p. m. he had gone with his family to a restaurant for dinner, and later had gone to a drug store to make some purchases. The restaurant owner and his wife, and a waitress, testified that Hoskins and his family were not at the restaurant that night. The owner testified that several days after the killing Hoskins had attempted to convince him that the Hoskins family was at the restaurant that night.

■ In our opinion the evidence as to Mullins is ample to sustain his conviction. In summary, the evidence warranted findings that he was in the company of Willis a few hours before the killing; his pistol was found in the Willis car; he made statements that his pistol did the killing; he was anxious that his clothes, on which there was some foreign substance that might have been blood, be thoroughly washed and he paid an excessive price to have them washed; he attempted to force two women to give a false alibi for him; he lied about his being in his hotel room and having taken a taxi ride; the Willis car, in which his pistol was found, was near the scene of the killing at the time of the killing. His entire conduct after the time of the killing was inconsistent with innocence, particularly his attempt to induce or force witnesses to give a false alibi for him. See Collier v. Commonwealth, Ky., 339 S.W.2d 167. We believe that the evidence establishes a chain of circumstances pointing unerringly to Mullins' guilt. See Hendrickson v. Commonwealth, Ky., 259 S.W.2d 1.

■ While the evidence as to Hoskins is not as full, we believe it is sufficient to sustain his conviction. The evidence warranted findings that he was in the company of Willis at 4:30 and again about 6:30 (around an hour before the killing) on the day of the killing; he went to the Willis

car, parked on the street, after the killing, and removed a package from it; the gun used by Willis had belonged to Hoskins and his story about giving it to Willis in payment of wages was not one that the jury was obliged to believe; he tried to convince the restaurant owner to go along with his false alibi of being in the restaurant on the night of the killing. Under authority of the Collier and Hendrickson cases, above cited, we think the evidence must be held sufficient.

The appellants contend that the trial court erred in overruling their motion for separate trials. Under RCr 9.16 the court is required to grant separate trials if a defendant "is or will be prejudiced * * * by joinder for trial." The contention is that since a substantial amount of the evidence, particularly as to the conduct of the defendants after the time of the killing, related only to one of the defendants and not the other, they were prejudiced by being tried jointly. In support of this argument it is pointed out that on nine occasions during the trial the court was required to admonish the jury to consider a particular item of evidence only against one defendant and not the other.

We have no direct Kentucky precedent on this question because RCr 9.16 is of recent origin and we have not previously been called upon to interpret it. Under the former Criminal Code defendants in felony cases were entitled to separate trials as a matter of right. The Federal Criminal Rule, Rule 14, is somewhat different from RCr 9.16 in that it says the trial court "may" grant separate trials where it appears there will be prejudice from joinder, where as RCr 9.16 uses the word "shall."

■ We find satisfactory precedent, however, in the decisions from other jurisdictions annotated in 70 A.L.R. 1185, 104 A.L.R. 1522, 131 A.L.R. 923, and 54 A.L.R. 2d 830. The prevailing rule appears to be that the mere fact that evidence competent as to one defendant but incompetent as to the other may be introduced is not alone suf-

ficient to establish such prejudice as to require the granting of separate trials. Ordinarily there must be some additional factor, such as that the defendants have antagonistic defenses, or that the evidence as to one defendant tends directly to incriminate the other, e. g., one defendant's admissions directly implicate the other. There are no such factors in the instant case. We shall accept the prevailing rule and hold that there was not such prejudice in the instant case as to require the granting of separate trials.

■ The contention is made that the trial court erred in not allowing each defendant 15 peremptory challenges. Under RCr 9.40 the defendants *jointly* are entitled to 15 challenges, with the court being given discretion to allow each defendant additional challenges. Here the court did allow five additional challenges. The appellants argue that since they would have been entitled to 15 challenges each if tried separately, they should have the same number when tried jointly. The simple answer to this is that the Rule does not so provide.

■ Complaints are made of the admission of various items of allegedly incompetent evidence. These complaints may be disposed of summarily as follows:

1. The fact that Frances Rader was not positive that Mullins was one of the men she saw talking with Willis did not make her testimony incompetent, but only went to the weight of the testimony. She said the man looked like Mullins, and was wearing clothes similar to those Mullins gave her to be washed the next day.

2. Frances Rader was not permitted to "continue" to describe stains on Mullins' clothing as blood stains. She said only once that the stains looked like blood or oil.

3. The testimony of Frances Rader that Mullins had a substantial sum of money with him was competent in view of the previous testimony that Winkler

had said three men had attempted to rob him. Furthermore, it was obvious from the circumstances of the crime that robbery was the motive.

4. There were no objectionable leading questions.

5. The testimony claimed to be hearsay was not hearsay because it consisted of statements made by the accused in the presence of the witness.

6. The fact that Margaret Sparks did not know what night it was that she saw Hoskins take a package from the Willis car did not make her testimony inadmissible. Testimony of the police officer that Hoskins admitted having gone to the Willis car and looked into it on the night of the killing, and other testimony showing that the car was moved the next day from the street where Mrs. Sparks had seen it, sufficiently fixed the night of the killing as the night she saw Hoskins at the car.

7. Testimony that the Willis car was found on a street in Richmond after the killing was competent, although there was no absolute proof that the Willis car was used in the crime. It was sufficient that Willis himself was found dead at the scene of the crime and that a car closely resembling his was seen leaving the vicinity of the crime.

8. Testimony that a pistol was found in the Willis car was competent circumstantial evidence. The Commonwealth was not required to disprove the possibility that someone might have "planted" the pistol in the car after the killing.

9. There was sufficient evidence that the car found on the street was Willis' car, and the testimony concerning the bill of sale found in the car could not have been prejudicial even if the testimony could be considered to violate the best evidence rule.

10. The sheriff did not testify to any hearsay of any consequence from Winkler.

11. Raymond Willis did not give any testimony implying another offense on the part of either of the defendants.

12. The testimony of Mrs. Reeves was from such records as she had, and from her personal knowledge, and it did not violate the hearsay rule or the business records rule.

Complaint is made concerning several statements made by the Commonwealth's attorney in closing argument, but we find nothing seriously objectionable in those statements, certainly nothing calculated to mislead or inflame the jury.

The judgment is affirmed.