Richard Earl COMPTON, Movant,

v.

COMMONWEALTH of Kentucky, Respondent.

and

Chester Eugene COMPTON, Movant,

v.

COMMONWEALTH of Kentucky, Respondent.

Supreme Court of Kentucky.

June 3, 1980.

Rehearing Denied Sept. 2, 1980.

Jack E. Farley, Public Advocate, Donna Boyce Proctor, Asst. Public Advocate, Frankfort, for Richard Earl Compton.

Steven L. Beshear, Atty. Gen., Nancy A. Barrickman, Asst. Atty. Gen., Frankfort, for Commonwealth.

Jack E. Farley, Public Advocate, Erwin W. Lewis, Asst. Public Advocate, Steven L. Beshear, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for Chester Eugene Compton.

STERNBERG, Justice.

Richard Earl Compton and Chester Eugene Compton were indicted by the Grand Jury of Fayette County, Kentucky, for the offense of robbery in the first degree (KRS 515.020), a Class B felony. On or about December 6, 1977, the C&H Rauch Company, Gardenside Shopping Center, Lexington, Kentucky, was robbed of merchandise valued at approximately $300,000. Richard and Chester were apprehended at their homes in Port Huron, Michigan. Each waived extradition and voluntarily returned to Kentucky for trial. Richard made a motion for a separate trial, which was granted. A one-day trial, March 20, 1978, resulted in a hung jury. The court thereupon declared a mistrial and ordered Richard to be tried the following day jointly with Chester. The joint trial lasted two days. Both Richard and Chester were found guilty, and the punishment for each was fixed at confinement in the penitentiary for a period of 15 years. On appeal to the Court of Appeals, the judgments of the trial court as to both Richard and Chester were affirmed. Both have been granted review by this court. We find it convenient to dispose of both cases in one opinion. The trial of Richard, separate and apart from Chester, will be hereafter referred to as the first trial. The trial at which both Richard and Chester were tried will be hereafter referred to as the second trial.

### Richard Earl Compton

Richard Earl Compton contends that "(t)he trial court denied appellant's due process right to a fair trial by overruling his motion for a separate trial on retrial after it initially granted him a separate trial which ended in a mistrial when the jury was unable to reach a verdict."

RCr 9.16 provides:

"If it appears that a defendant or the commonwealth is or will be prejudiced by a joinder of offenses or of defendants in an indictment or information or by joinder for trial, the court shall order separate trials of counts, grant separate trials of defendants or provide whatever other relief justice requires. A motion for such relief must be made before the jury is sworn or, if there is no jury, before any evidence is received. No reference to the motion shall be made during the trial. In ruling on a motion by a defendant for severance the court may order the attorney for the commonwealth to deliver to the court for inspection in camera any statements or confessions made by the defendants which the commonwealth intends to introduce in evidence at the trial."

██ We need to determine whether Richard was prejudiced by being forced into a joint trial with his brother Chester. The trial judge has broad discretion in granting or refusing to grant a severance, and this court will not disturb the ruling unless there is a clear abuse of discretion. *Harris v. Commonwealth*, Ky., 556 S.W.2d 669 (1977). Having established the standard by which we are to be guided, we turn to a consideration of the facts which would justify giving to Richard the relief which he seeks.

Before proceeding to trial on March 20, 1978, the court, the parties and their counsel retired to the judge's chambers to consider Richard's motion for a separate trial. The court made the following determination:

"THE COURT: The first order is the jury has not been sworn at this time, and this is a hearing in chambers. The defendants are present with their attorneys. There was a motion in this case by Richard Earl Compton that he receive a separate trial, and the Commonwealth informed the Court there was some connection that maybe a separate trial may be in order because of statements given by each defendant which conflicts the statement given by the other defendant. The

question of whether Chester Eugene Compton had standing to object was not raised, and Mr. Weinberg agrees and does not object to the separate trials. Therefore, this trial today is only Richard Earl Compton."

Richard was given the privilege of a trial without the onus, if any, of being associated with Chester. On the evidence as submitted and the instructions of the court, Richard was not found guilty. The second trial not only gave the Commonwealth a second bite of the apple, which in and of itself is not necessarily prejudicial, but it did result in the introduction of evidence directed at Chester which was prejudicial to Richard and contributed to his conviction. This evidence had not been heard or considered by the court or jury in Richard's separate trial.

On the first trial, as well as on the second trial, the testimony tending to identify Richard and Chester as the ones who had committed the robbery was of very poor quality. Its quality was improved, however, against Richard by having Chester identified as one of the robbers and having both of them travelling around the country together. Richard had talked freely with the officers and had made three statements after his arrest. On his separate trial his testimony relative to travelling around and about was not contradicted by anyone; however, on the joint trial evidence was introduced which conflicted with what he had said. Needless to say, Chester did not take the stand and Richard's statements could not be cleared up or in anyway explained away. They became material factors contributing to Richard's conviction.

The Commonwealth's Attorney considered the conflicts in the testimony to be of such importance that he clearly and elaborately emphasized them in his closing summation. At no time during the first trial was there any evidence relating to Richard's having a gun. On the second trial, Officer Gibbon of the Lexington-Metropolitan Police Department quoted Richard as denying that he possessed a gun in the last several months. Linda Laturno, however, testified on the second trial that in September she saw them (Richard and Chester) with a shotgun and a handgun in the trunk of a car. Richard's separate trial, on March 20, was not concluded until 9:45 p. m., and within minutes the court advised him and his counsel that he would be retried the next day jointly with his brother, Richard's objections notwithstanding. The Commonwealth's Attorney emphasized that Richard and Chester were travelling together, apparently in an effort to convict by association, e. g., where one was the other would be also. Both Richard and Chester had voluntarily and freely made statements to the arresting officers. The statements contained minor differences. The Commonwealth's Attorney emphasized that Richard said they had hitchhiked to Florida, while Chester said they drove to Florida; that Richard said they went one time to Florida, and Chester said they went twice. Richard stated that he had never been in Kentucky, but later qualified it with a statement that he may have driven through Lexington. Chester said that they stopped in Pikeville on their trip to Florida. Richard denied that he had had a gun within the last several months. Chester stated that he did not have a gun of any type, at least not within the past six months; however, he did admit to having had a handgun sometime prior to his arrest. The Commonwealth's Attorney charged Richard and Chester with having made inconsistent statements because they had never "gotten together and talked about what they were doing during this period of time." It is not unusual for testimony to differ, and certainly it is not just criticism against either Richard or Chester that they had not gotten together to compare and come up with a common story.

In *Hoskins v. Commonwealth*, Ky., 374 S.W.2d 839 (1964), we cleared the air that the mere introduction of evidence that is competent as to one defendant and incompetent as to the other is not in and of itself grounds to grant a severance. We went on to say, "(o)rdinarily there must be some additional factor, such as that the defendants have antagonistic defenses, or that the

evidence as to one defendant tends directly to incriminate the other, e. g., one defendant's admissions directly implicate the other." In *Rachel v. Commonwealth*, Ky., 523 S.W.2d 395 (1975), we said, "(w)hether a separate trial should be granted is a matter within the sound discretion of the trial judge."

█ The trial judge recognized the propriety of giving Richard a separate trial, and did so. It was called to the court's attention by the Commonwealth's Attorney that there likely would be introduced into evidence statements of Richard and Chester which were conflicting. By granting the separate trial, the trial judge obviated the possible prejudice that could accrue if they were tried together. The likelihood of Richard's being prejudiced existed on March 20, 1978, and was of sufficient gravity to justify a separate trial. We find nothing in the record which would manifest that it would be less likely on March 21, 1978, that Richard would be prejudiced when the court ordered Richard and Chester tried together. As a matter of fact, the record discloses that on the second trial the conflicting statements mentioned by the Commonwealth's Attorney to the trial judge were introduced over objections. Not only were the conflicting statements introduced into evidence, but we reiterate they were capitalized on by the Commonwealth's Attorney in his summation to the jury.

We are of the opinion that the refusal of the trial judge to grant a severance amounted to a clear abuse of discretion, and prejudice to Richard is clearly shown.

### Chester Eugene Compton

Chester Eugene Compton argues that "(a)ppellant's conviction violated due process of law because of the insufficiency of the Commonwealth's evidence."

In *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977), this court harmonized the various statements that were being espoused as to the sufficiency of the evidence to support a conviction. We said, "(i)f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." We must bear in mind this criterion as we consider Chester's first issue.

In his opening statement to the jury, the Commonwealth's Attorney stated, "(b)asically our case will be based upon the eyewitness identification of George Spradlin, Shirrell Mynear and Bill White." The transcript of record discloses that the action of the trial court in submitting the case to the jury was in truth and fact justified by the testimony of these three witnesses, even though their identifications were not crystal clear or unequivocable. We need, therefore, to look at the identifying testimony without a jaundiced eye but with a clear vision.

George Spradlin, 21 years of age, a senior at Transylvania University, and a part time employee of the jewelry store, was on duty at the time of the robbery. He testified that the first robber who entered the store had a pillowcase and that the next one had a pistol; that while Shirrell Mynear was putting the jewelry in the pillowcase, the second robber held a handgun on him; that the robbers attempted to exit through a one-way door, but being unable to do so, hurried to another door; that they were travelling in a truck, but by reason of the streets being covered with ice and snow, had difficulty getting the truck to move; that they did however make their escape. This witness said that he had a good view of the robber who had the pillowcase, but did not have a good view of the one holding the gun. He stated that shortly after the holdup, actually about December 27, 1978, he viewed two picture lineups and made a "positive" identification of Richard, but could not identify anyone in the lineup as Chester. He also made a "positive" in-court identification of Richard, but could not make an in-court identification of Chester, even though Chester stood up at his chair so that the witness could see him.

Shirrell Mynear, an employee of C&H Rauch Company, testified that the robbery lasted only about two or three minutes and

he got to see the robber who was last to enter for only about one minute. He testified that at the time of the physical lineup identification he was in Florida, but upon his return he was asked to make a picture identification of Chester. After viewing the picture lineup, he selected person # 1 as a "maybe" identification of Chester. He was again asked to make a second picture identification, which he did, and this time he selected person # 5 as a strong probability of being one of the robbers. Neither of the persons identified in the pictures was Chester. During the course of the trial this witness was asked to look about the courtroom and state whether he could identify anyone as being the person who committed the robbery. For the first time he correctly identified Chester as one of the robbers. The witness had seen Chester in shackles the prior day and had seen him sitting at the defense table since the trial had started.

William White, also an employee of the jewelry store, testified that the robbery lasted only three or four minutes. He did not see the first robber until the robbery was in progress. He did see the second robber enter the store carrying a large caliber handgun. He made a "positive" picture identification of Chester; however, the picture turned out to be Michael Hess not Chester. He also made a "positive" picture identification of Richard, which turned out to be Grant Blevins not Richard. During the course of the trial the witness was asked by the Commonwealth's Attorney to look about the courtroom and tell the jury whether he saw anyone in the courtroom that committed the robbery. The witness pointed to Chester and his brother Richard.

■ We summarize the testimony relating to identification. First, George Spradlin made a "positive" picture identification of Richard, but could not identify anyone in the lineup picture as Chester. He made a correct "positive" courtroom identification of Richard, but could not identify Chester. Second, Shirrell Mynear made two erroneous picture lineup identifications of Chester and a correct physical identification of Chester in the courtroom only after seeing

him in shackles and seated at the defense counsel table. Third, Bill White made erroneous picture identifications of both Richard and Chester; however, in the courtroom he identified both of them.

It appears to this court that even though the ability of the witnesses to identify Richard or Chester was buoyed up by seeing them in shackles the day before the second trial and by seeing them seated at the defense table with their attorneys during the course of the trial, there was sufficient identification for the trial judge to determine, after considering the evidence as a whole, that it would not be clearly unreasonable for a jury to find them guilty. He then was justified in submitting the issue of guilt to a jury, which he did.

■ At this point, the posture of these cases is that Richard's case is being returned to the trial court so that he may be tried separate and apart from Chester. Chester, on the other hand, stands convicted in a trial that we have already said justified a severance. RCr 9.16. It is axiomatic that Chester is entitled to a fair and impartial trial, even if it is just a tolerably fair trial. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977). In order to afford Chester a fair and impartial trial, we are of the opinion that he is entitled to a trial separate and apart from Richard's.

Chester also argues that the trial court erred to his prejudice in permitting extrajudicial statements of his non-testifying co-defendant (Richard) to be admitted into evidence. In view of the fact that Richard's case is being reversed so that he may have a trial separate and apart from the trial of Chester, it follows as night the day that Chester will have a trial separate and apart from Richard's. That being so, we do not reach this issue.

The judgments are reversed and these cases are remanded to the Fayette Circuit Court for new trials consistent with this opinion.

All concur, except STEPHENS, J., who did not sit.