Brenda HUMPHREY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 88–SC–897–MR.

Supreme Court of Kentucky.

June 4, 1992.

Julie Namkin, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., David A. Smith, Elizabeth A. Myerscough, Asst. Attys. Gen., Crim. Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Brenda Humphrey of capital kidnapping, facilitation of murder, first-degree robbery, facilitation of first-degree rape and criminal conspiracy. The jury fixed punishment for the capital kidnapping at life in prison without the possibility of parole for 25 years. Humphrey was sentenced to a total of 40 years in prison on other charges, which sentence was enhanced to 50 years on her guilty plea as a first-degree persistent felony offender.

Twelve issues were raised by the brief and supplemental brief of Humphrey. We will consider each of the allegations of error.

Humphrey was tried jointly with Gregory Wilson in connection with the death of a woman who was kidnapped at knife point outside of her apartment in Covington. The victim was placed in the backseat of a car driven by Humphrey and raped, robbed and murdered. Her body was dumped in a rural part of Indiana, just west of Indianapolis.

I

■ The first issue is whether evidence of Humphrey's guilt on the robbery charge was sufficient to withstand a motion for directed verdict. Initially, we must observe that the argument now presented was not properly preserved for appellate review. At trial, Humphrey challenged the sufficiency of the evidence pertaining to both the elements of robbery; theft and force. However on appeal, she limits her argument to the element of force. Humphrey, who was represented by counsel, did not object to the giving of a first-degree robbery instruction, nor did she tender an instruction on a lesser degree of robbery or theft.

An examination of the record in this case indicates that there was sufficient evidence from which a reasonable juror could infer that Humphrey threatened and used force and caused physical injury. The trial judge did not err in allowing the robbery charge to go to the jury. There was testimony that not only had she helped plan the robbery, but she also aided in subduing the victim during the robbery. The evidence of force and injury was sufficient to sustain a robbery conviction. We have considered the supplemental authority cited by Humphrey and find it to be not applicable. The legal standard for determining whether a case should go to the jury is established in *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977). The appellate standard of review was first enunciated in *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1984) and reiterated in *Benham v. Commonwealth*, Ky., 816 S.W.2d 186 (1991).

II

■ Humphrey next argues on appeal that the trial judge committed reversible error when he allowed her to be placed in the death-eligible class for her accomplice-to-kidnapping conviction despite the verdict of the jury finding her not guilty of murder. It is admitted that this issue is not preserved but it is requested that the Court review it pursuant to RCr 10.26.

Humphrey was not sentenced to death. It is conceded that Humphrey facilitated an intentional murder. She was a principal in robbery and a co-conspirator as well. An accomplice to a capital offense is eligible for the same punishment as the principal. *Halvorsen v. Commonwealth*, Ky., 730 S.W.2d 921 (1986). Humphrey's participation in the series of criminal activities leading to the victim's death was significant. We find no reason to review this allegation of error on the basis of RCr

10.26 or *Stone v. Commonwealth,* Ky. 418 S.W.2d 646 (1967).

## III

■ Humphrey claims that she was denied her constitutional guarantee against double jeopardy and her right to have the class of persons eligible for the death penalty genuinely narrowed when the trial judge improperly allowed the underlying felony of robbery to be used at the guilt phase to obtain a substantive first-degree robbery conviction and as an element of the felony kidnapping conviction and then allow the same underlying felony to be used at the penalty phase as the sole aggravating factor to place her in the death-eligible class. This issue was not preserved but can be reviewed pursuant to a double jeopardy analysis.

■ The victim was abducted near her home and forced into her own car by Wilson. She was then driven to an isolated area near the flood wall and forced by Wilson to lie face down on the grass while Humphrey went to obtain gas for the automobile. Upon Humphrey's return, the victim was again forced into the automobile in the back seat with Wilson. During this time, the victim was raped, robbed and murdered. The double jeopardy theory does not apply. *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). When the restraint has progressed beyond that which occurs immediately with and incidental to the commission of an offense, such as robbery or rape, the offender is guilty of kidnapping and the exemption statute does not apply. *Gilbert v. Commonwealth,* Ky., 637 S.W.2d 632 (1982).

■ Humphrey's second double jeopardy contention is that the rape and robbery convictions cannot be used to prove aggravating circumstances for kidnapping at the penalty phase. K.R.S. 532.025 does not mandate that the accused be punished for the same offense twice. The statute only requires that the aggravating circumstances be used to determine only whether the crime of kidnapping should carry the death penalty. K.R.S. 532.025(1)(b).

Simply because the aggravating circumstance is duplicative to one of the underlying offenses does not mean that the accused is being punished twice for the same offense. The underlying offenses were only factors to be considered as to whether the punishment for kidnapping should be death. Humphrey was not subjected to double jeopardy or multiple punishment for the same offense. *Cf. Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

## IV

Humphrey contends that she was entitled to a separate trial and that the trial judge should have on his own motion ordered the cases severed. In the alternative, she claims her mistrial motion should have been granted because codefendant Wilson's *pro se* representation denied her a fair trial.

It was not necessary for the trial judge to *sua sponte* order separate trials. In *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the U.S. Supreme Court rejected a claim that a joint trial of a capital defendant and a noncapital defendant deprived the latter of due process because in a separate trial his jury could not be death qualified.

■ A criminal defendant is not entitled to severance unless there is a positive showing prior to trial that joinder would be unduly prejudicial. RCr 9.16. *Commonwealth v. Rogers,* Ky., 698 S.W.2d 839 (1985). The trial judge has considerable discretion in ruling on such on such a motion. *Wilson v. Commonwealth,* Ky., 695 S.W.2d 854 (1985); *Rachel v. Commonwealth,* Ky., 523 S.W.2d 395 (1975). The joinder of defendants Wilson and Humphrey for trial did not unfairly prejudice Humphrey.

■ The contention by Humphrey that evidence unrelated to her was introduced during her trial which would have been excluded had separate trials been granted is without merit. The fact that evidence may pertain to one defendant but not the

other. is insufficient to establish the kind of prejudice needed for separate trials. *Hoskins v. Commonwealth,* Ky., 374 S.W.2d 839 (1964).

### V

■ Humphrey claims that she was denied her right to confrontation when codefendant Wilson made his own closing argument and said that Humphrey told her sister she killed the victim. Wilson did not testify at trial and there was no evidence to support his statement.

The jury had been informed that opening and closing statements were not evidence. Wilson's statement did inculpate Humphrey but was not vitally important to the prosecution's case. *United States v. Sacco,* 563 F.2d 552 (2nd Cir.1977). The prosecution objected to the statement. Defense counsel also objected but did not seek an admonition from the court. A review of the record indicates that Humphrey suffered no manifest injustice or prejudice as a result of Wilson's statement. Wilson denied he ever met or even knew the victim, but was convicted of murder by the jury. Humphrey was only convicted of facilitation to murder.

### VI

In brief and at oral argument, counsel for Humphrey argues that she was denied effective assistance of counsel because her trial lawyer had previously represented a prosecution witness. Humphrey says this representation resulted in an automatic conflict for her trial attorney because he failed to use privileged information in cross-examining the witness or feared misuse of such information in his cross-examination. Humphrey urges *United States v. Jeffers,* 520 F.2d 1256 (7th Cir.1975) as her legal authority.

■ We do not agree. Humphrey was not denied effective assistance of counsel, a fair trial or due process of law because her trial attorney represented a prosecution witness on an unrelated charge. *Jeffers, supra,* observes that in determining whether a conflict actually exists, the courts must examine the particular circumstances. The trial judge asked defense counsel to go into more detail with the witness if she had any difficulty with his cross-examining her. The witness's attorney-client privilege was involved, not the defendant's. The trial judge noted that defense counsel did not want to put himself into a position which might lead to difficulties, and defense counsel responded that he had no problem. As noted in *Jeffers,* courts can generally rely on the sound discretion of members of the bar to treat privileged information with appropriate respect.

■ The mere fact that an attorney is unable to pursue one line of inquiry does not mean that the defendant is receiving inadequate representation. *Jeffers.* Humphrey cannot complain that the defense lawyer possessed confidential information from his previous representation of the prosecution witness which he did not use to impeach her on behalf of Humphrey. Defense counsel could not violate the original attorney-client privilege.

■ Humphrey has not articulated specifically what confidential information defense counsel may have possessed, if any, relative to his cross-examination of the witness. The burden of demonstrating materiality of such information is on Humphrey. *Jeffers,* pp. 1266–1267.

A careful review of the record regarding the performance of defense counsel in this specific situation indicates no impropriety or ineffectiveness. Indeed it reflects a skillful and experienced defense counsel conscientiously representing his defendant. Complaints about defense counsel's closing remarks and his selection of trial tactics are unpersuasive.

Humphrey's contention that her defense counsel never advised her of any possible conflict is unconvincing. A better procedure might have been to tell Humphrey of the previous representation on the record. "Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Strick-*

land v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) quoting Culyer v. Sullivan, 446 U.S. 335, at 350, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Here, Humphrey has merely assumed a presumption of prejudice without establishing any actual conflict. She speculates on the possibility of conflict but does not demonstrate actual conflict and has not shown how defense counsel's performance was adversely affected by such conflict.

## VII

Humphrey claims that she was substantially prejudiced and denied due process and a fair trial when the prosecution introduced evidence in rebuttal that should have been presented in its case-in-chief.

Humphrey testified in her own defense and admitted knowing witness Stith while in jail and having conversations with her about this case. Humphrey denied important elements of the testimony by prosecution witness Stith. On cross-examination, Humphrey admitted that the story she told Stith was not the same story to which she testified. On rebuttal, Stith testified that she knew Humphrey in jail and that Humphrey told her certain things about the case. Stith testified that Humphrey told her that the victim was abducted in order to rob her of drugs or for drug money and that they drove from Covington to Ludlow to Hebron. The witness testified that Humphrey referred to the victim as a "tough bitch" several times and that the victim put up a fight in the car making it necessary for Humphrey to help codefendant Wilson. The witness did not elaborate as to what help Humphrey provided. Humphrey contends that her statements to Stith were in the nature of an admission of guilt and consequently were properly admissible only in the case in chief of the prosecution. She relies on Wager v. Commonwealth, Ky., 751 S.W.2d 28 (1988) and Gilbert v. Commonwealth, Ky., 633 S.W.2d 69 (1981) for her legal authority prohibiting the introduction of this kind of statement.

This case is distinguishable from Wager, supra and Gilbert, supra. In Wager, the prosecution waited to introduce the confession of the defendant to a fellow inmate until rebuttal. The confession included an admission that he had broken into a home where he beat and raped a woman. The confession included peculiar details as to why the defendant had done certain acts unexplained prior to rebuttal. In Gilbert, the prosecution introduced on rebuttal a taped confession by the defendant to police officers wherein he admitted having sexual intercourse with his granddaughter. The admissions of guilt in Gilbert and Wager are specific accounts of the crimes. This is not the case with the Stith rebuttal testimony. She testified to three specific details as distinguished from an entire course of criminal conduct. Moreover, the rebuttal testimony in Wager and Gilbert were the only confessions to the crimes and were introduced after the defendants testified denying involvement. That is not the situation here. Humphrey had confessed to another witness whose testimony was introduced during the prosecution's case-in-chief.

Wager and Gilbert indicate that the prosecution waited to introduce the admissions of guilt until the rebuttal stage in order to gain a tactical advantage. Wager claimed complete surprise. That is not the situation here. Humphrey admits she had obtained the statement of Stith through pretrial discovery. The trial prosecutor explained his reluctance to use Stith in view of the fact that another witness had already testified about the Humphrey confession. It was only because of the testimony of Humphrey at trial that the prosecution thought it was necessary to use the Stith testimony in rebuttal.

The only statement by Stith not generally presented during the case-in-chief was Humphrey's remark that she helped codefendant Wilson. In view of the other evidence in the case, such help could easily be inferred by her driving the car, disposing of the body, using the stolen credit cards, cleaning the car and her statement to the victim, "You have seen us." The rebuttal testimony is cumulative in nature to what had already been presented during the

case-in-chief. It did not amount to the type of rebuttal evidence condemned in *Wager* and *Gilbert.*

Humphrey's argument that the rebuttal testimony regarding the fact that the victim put up a fight in the car making it necessary for Humphrey to help codefendant Wilson was new evidence directly relating to the question of whether Humphrey was guilty as a principal or an accomplice is misplaced. Humphrey cannot legitimately claim prejudice because she was not convicted of rape or murder. She was convicted of kidnapping and of conspiracy to commit robbery. The kidnapping occurred before the victim was put into the car the first time. The conspiracy to commit robbery occurred when the codefendants searched the streets to find a victim and first approached this victim. These crimes did not occur in the car. The robbery, the disposition of the body, and the taking of her jewelry could have been determined by the jury to have occurred either in the car or elsewhere or both. The statement regarding Humphrey's helping codefendant Wilson with the victim in the car is not a critical fact that the jury had to find before convicting Humphrey of robbery. She was found guilty of facilitation to murder and facilitation to rape. There was no advantage obtained by the prosecution by the introduction of the rebuttal testimony.

## VIII

■ The evidence of the knowledge and assistance of Humphrey was clearly sufficient to convict her of facilitation of rape and facilitation of murder. *Commonwealth v. Sawhill, supra; Trowel, supra; Benham, supra.* The evidence of Humphrey's guilt on the charges of facilitation of rape and murder was sufficient to withstand a motion for directed verdict. The evidence was sufficient to support denial of a directed verdict.

Humphrey challenges the sufficiency of the evidence to convict her as a facilitator of rape and murder. Her self-serving claim that she did not know in advance that the rape and murder would occur misses the point. Humphrey testified about the events which occurred while she was driving the victim's car. Clearly, she was acting with the knowledge that another person was committing the crimes. She helped plan the robbery and the abduction prior to the rape and murder and she knowingly provided codefendant Wilson with the means or opportunity for the commission of the crimes which in fact aided him in committing those crimes. K.R.S. 506.080.

## IX

■ The evidence of Humphrey's guilt of the crime of criminal conspiracy was sufficient to withstand a motion for directed verdict. Humphrey asserts that there was no evidence of an overt act in furtherance of the conspiracy. She also raises on appeal arguments attacking the sufficiency of the indictment and the sufficiency of the jury instruction.

K.R.S. 506.110(2) provides that there must be an agreement that one of the conspirators will commit a crime; that one of the conspirators must make an overt act towards the commission of the crime and that a conspirator may be convicted of both the conspiracy and the crime if the plan contemplated multiple offenses. The indictment and the jury instructions reflected these requirements. There was testimony that co-conspirators Wilson and Humphrey had been walking around looking for someone to rob and that the victim was abducted for robbery and drugs and drug money. The testimony of Willis Maloney revealed that, "Their motive was robbery, because she (Humphrey) and him (Wilson) were the only ones that knew that's why they *snatched* her in the first place...." Humphrey denied that she and codefendant Wilson had talked about robbing any one, and stated that she didn't know anything about what he was going to do when he approached the victim.

It is reasonable to infer from the circumstances that the conspiracy contemplated robbery as well as kidnapping. The evidence of a criminal conspiracy was sufficient to support the verdict of the jury. *Sawhill; Trowel; Benham.*

## X

The conviction of Humphrey for robbery and conspiracy to commit robbery did not constitute double jeopardy or multiple punishment. Humphrey argues that the conspiracy conviction should be dismissed because there was no evidence of any agreement other than to commit robbery. The testimony of Maloney and other evidence indicate a plan of conspiracy by both defendants to rob and kidnap the victim and to take any other illegal actions necessary to achieve success in the criminal enterprise. It is reasonable to infer that Wilson and Humphrey intended to kidnap a victim in order to commit robbery and subsequently decided to kill her so as not to be identified, and the victim was raped by Wilson during the period of her abduction prior to the murder.

K.R.S. 506.110(2) specifically authorized punishment for robbery as an addition to and not a substitute for conspiracy in cases meeting the standards of the statute. The offenses are considered separate and a claim of double jeopardy is no bar to cumulative sentences. *Garrett v. United States, supra; Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990) is not applicable.

K.R.S. 506.110(3) is of no assistance to Humphrey in this situation. Here her opportunity to discontinue the criminal enterprise was presented when she went for gas for the automobile. There was a break in the so-called continuous course of conduct.

## XI

Humphrey contends that her right to an impartial jury was denied because the prosecutor used eight of nine peremptory challenges to remove jurors with reservations towards the death penalty.

There was no reversible error because it is not improper to death qualify the jury in a capital case. *Buchanan, supra.* Potential jurors whose only common attitude is opposition to capital punishment do not make up a constitutionally recognizable group exempt from peremptory challenge on that basis. *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

## XII

Humphrey was not denied due process of law or a fair trial by reason of the introduction of photographs and corresponding testimony. We have reviewed the photos and do not believe they were inflammatory or served to arouse the passions of the jury in any way. *Cf. Holland v. Commonwealth*, Ky., 703 S.W.2d 876 (1986); *Clark v. Commonwealth*, Ky., 833 S.W.2d 793 (1991).

The judgment of conviction is affirmed.

STEPHENS, C.J., and LAMBERT, REYNOLDS and SPAIN, JJ., concur.

LEIBSON, J., dissents by separate opinion, in which COMBS, J., joins.

LEIBSON, Justice, dissenting in part.

Respectfully, I dissent from so much of the holding as affirms Humphrey's conviction for conspiracy.

I do so for the same reasons I stated in *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872, in my opinion therein "Dissenting in Part."

COMBS, J., joins this dissent.