RENDERED: JUNE 16, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0528-MR

JONATHAN SEXTON                                         APPELLANT

V.               ON APPEAL FROM CLAY CIRCUIT COURT
HONORABLE OSCAR G. HOUSE, JUDGE
NO. 17-CR-00149-001

COMMONWEALTH OF KENTUCKY                 APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

Jonathan Sexton appeals from his conviction for one count of second-degree rape, one count of third-degree rape, and two counts of incest. Finding no reversible error, we affirm the trial court.

## I.    BACKGROUND

Jonathan Sexton (Sexton) and Tina Sexton (Tina) were married in late 2000. The couple had two daughters, MS and RS,[1] born in 2001 and 2006 respectively. The family lived together in a trailer in Clay County. Shortly after MS turned 12, in December of 2013, Sexton began sexually abusing her. The abuse began with inappropriate touching and rubbing of MS's legs and privates. Soon after, Sexton put his hand down MS's pants and inserted his

---

[1] We have changed the names of the children to MS and RS to protect their privacy.

fingers into her vagina. Then, Sexton got under the covers with MS, forced her to take off her clothes, began touching her breasts and vagina with his hand, and eventually inserted his penis into MS's vagina. After this incident, Sexton raped his daughter MS almost every day for three years.

MS told her mom in December of 2016 that Sexton was abusing and raping her. After that, Sexton reduced the frequency of his abuse. The last time Sexton had intercourse with MS was in May or June of 2017. In October of 2017, MS told her mother, Tina, that Sexton had continued to rape her. After being told a second time about the continued abuse, Tina took MS to the hospital to officially report it. Sexton was arrested soon after and indicted on second-degree rape, third-degree rape, and two counts of incest. Tina was indicted for complicity to third-degree rape and complicity to incest.

Tina and Sexton were jointly tried for their offenses on May 21, 2019. On the first morning of trial, Sexton requested orally that his case be severed from Tina's. He made this request for the benefit of Tina's case, not his own, stating "Clearly [Sexton's] situation is going to be prejudicial to [Tina]." The trial court denied this motion, and the court proceeded with testimony.

The Cabinet for Health and Family Services social worker assigned to MS's case, Susan Smith, testified at trial that Sexton had admitted to "insert[ing] his penis in [MS's] vagina at least two times," performing oral sex a few times, licking her vagina multiple times, and engaging in multiple other sexual encounters. This testimony was bolstered by a pediatric gynecologist's

2

testimony that an examination of MS showed evidence of "multiple penetrations."

MS also testified to Sexton's behavior towards her. The Commonwealth elicited testimony from MS that Sexton touched her inappropriately every day after the first encounter. She testified that each time he abused her, it "ended up in sexual intercourse" with Sexton inserting his penis into her vagina. In addition to penile penetration, MS also testified that Sexton attempted to insert a house phone into her vagina. MS testified that the intercourse would occur in the living room, her bedroom, and his bedroom. MS stated that he continued "doing the same thing he did [the first day he raped me], every day." After the prosecution asked MS to clarify, she testified to being raped almost every day each week during 2014, 2015, and 2016. She testified that although Sexton sexually abused her less frequently after December of 2016, when she first told her mother of the abuse, MS also testified that Sexton continued to rape her until May or June of 2017.

In her closing argument, the attorney for Sexton conceded that Sexton was guilty of raping MS, stated that Sexton clearly needed treatment, and offered no defense for Sexton's actions. Counsel for Sexton stated that Sexton "came to court ready and willing, thinking he was going to accept responsibility for his conduct," and that "for reasons beyond his and my control, we ended up in trial." The jury found Sexton guilty of all four counts in his indictment and recommended a sentence totaling 55 years' imprisonment. His appeal to this Court followed.

## II.    ANALYSIS

Sexton argues that his trial should have been severed from Tina's, and that Tina's counsel improperly made statements against Sexton's interest in closing arguments. He also argues that the trial court's jury instructions violated his right to a unanimous jury verdict. Finally, Sexton argues that he did not receive proper notice of Kentucky Rule of Evidence (KRE) 404(b) evidence admitted at trial and that the evidence was not properly admitted. We address each argument in turn.

### A.  *Severance of the Trials*

Sexton argues that the trial court's refusal to sever his case from Tina's was prejudicial in two ways. First, Sexton claims that Tina's counsel acted against his interest in the case, pushing blame from her and onto him. Second, Sexton claims that prejudice resulted from Tina's testimony, in which Tina described Sexton as a bad man and herself as a second victim in his crimes.

Under Rule of Criminal Procedure (RCr) 6.20, two or more defendants may be jointly tried if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." RCr 8.31 requires the trial court to "grant separate trials of defendants or provide whatever other relief justice requires" if it appears that a defendant will be prejudiced by a joint trial. To warrant severance, a joint trial must be so prejudicial as to be "unnecessarily or unreasonably hurtful." *Elam v. Commonwealth*, 500 S.W.3d 818, 822 (Ky. 2016) (quoting *Ratliff v.*

4

*Commonwealth,* 194 S.W.3d 258, 264 (Ky. 2006)) (internal quotation marks omitted).

Of course, a "certain degree of prejudice is inherent in the joinder of offenses." *Peacher v. Commonwealth,* 391 S.W.3d 821, 838 (Ky. 2013). As a result, "[n]either antagonistic defenses nor the fact that the evidence for or against one defendant incriminates the other amounts, by itself, to unfair prejudice." *Taylor v. Commonwealth,* 995 S.W.2d 355, 360 (citations omitted). A trial court's denial of severance will be upheld "absent a showing of actual prejudice . . . and a clear abuse of discretion by the judge." *Id.* Accordingly, "[t]he trial judge has considerable discretion in ruling on such a motion" and must do so based upon the information available before trial begins. *Humphrey v. Commonwealth,* 836 S.W.2d 865, 868 (Ky. 1992) (citing *Wilson v. Commonwealth,* 695 S.W.2d 854 (Ky. 1985); *Rachel v. Commonwealth,* 523 S.W.2d 395 (Ky. 1975)).

The trial court did not err by denying Sexton's motion to sever. Tina was charged with complicity to some of Sexton's alleged crimes. The trial court, before the onset of trial, was presented no evidence that Sexton would suffer unfair prejudice by the joining of his trial with that of Tina. *See, e.g., Peacher,* 391 S.W.3d at 838 ("Accordingly, in assessing whether joinder resulted in undue prejudice, we have asked, with KRE 404(b) particularly in mind, 'whether evidence necessary to prove each offense would have been admissible in a separate trial of the other.'" (citations omitted)). In fact, Sexton's sole stated reason for requesting severance was to forego any prejudice affecting

5

*Tina*, seemingly acknowledging the overwhelming evidence against himself. With only that justification for severance before trial, the trial court did not abuse its discretion in denying severance, since that prejudice was already inherent. Even if the trial court severed the two trials of the two defendants, the same or substantially similar proof would have been admitted at both Sexton's and Tina's trials, since her only charges were complicity to Sexton's crimes.

Further, the fact that Tina's counsel was antagonistic and her testimony was incriminating is insufficient to establish a showing of undue prejudice, and this Court's precedent holds such circumstances do not require reversal. *See Ratliff*, 194 S.W.3d at 265. Thus, the trial court did not err by denying Sexton's motion for severance.

### B. Unanimity of Jury Verdict

Sexton next alleges he was denied his right to a unanimous jury verdict. Section 7 of the Kentucky Constitution guarantees criminal defendants the right to unanimous jury verdicts. Alleged unanimity errors are questions of law. Such errors are therefore reviewed de novo. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015).

The Commonwealth contends that Sexton waived his right to a unanimous jury verdict by admitting guilt in his closing argument and by failing to preserve the issue through either objection or a motion for directed

6

verdict. Although we are not persuaded by either argument for waiver,[2] the Commonwealth points to an important factual distinction in this case. Sexton's concession of guilt is not only relevant, but dispositive.

Because Sexton failed to preserve his unanimity argument and because lack of preservation is not a waiver, we review for palpable error. *See Elam*, 500 S.W.3d at 826; RCr 10.26. "[A] palpable error affecting the substantial rights of a party, even if insufficiently raised or preserved, is reviewable, and, upon a determination that it has resulted in manifest injustice, reversible." *Deemer v. Finger*, 817 S.W.2d 435, 437 (Ky. 1990) (citing CR 61.02). Manifest injustice is found only where, after consideration of the record, the defect alleged was "shocking or jurisprudentially intolerable" and where "the error seriously affected the 'fairness, integrity, or public reputation of the proceeding.'" *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006) (citations omitted). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* at 3. When we engage in palpable error review, our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the

---

[2] A waiver "is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004) (quoting *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995)). The right in question stems from Section 7 of the Kentucky Constitution. Conceding that the Commonwealth has met its burden of proof is necessarily distinct from a defendant's right to trial and a unanimous jury verdict. Sexton's concession is not equivalent to a "voluntary and intentional surrender" of his right to a unanimous verdict.

integrity of the judicial process." *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013) (quoting *Martin*, 207 S.W.3d at 5).

Manifest injustice was not present here. Sexton's counsel was open about the fact that he was guilty of the alleged conduct. Counsel requested leniency and for the jury to consider mitigating factors in sentencing. Even absent potential error resulting from jury instructions that violated Sexton's right to a unanimous verdict, this Court cannot hold that there is any possibility that the result of the case would have been different. Sexton, through counsel, acknowledged guilt; the jury agreed that he was guilty of two counts each of rape and incest. Such an error, to the extent that it occurred, cannot have resulted in manifest injustice.

Accordingly, we distinguish this case from the cases preceding it in which the majority of this Court has held that *any* unanimity error is, by necessity, palpable. *See, e.g.*, *Martin v. Commonwealth*, 456 S.W.3d 1, 9–10 (2015) ("[A]ll unanimous-verdict violations constitute palpable error resulting in manifest injustice."); *see also Justice v. Commonwealth*, 636 S.W.3d 407, 415 (Ky. 2021) ("If the jury instructions created a unanimous-jury-verdict problem, reversal is required because defendants are guaranteed the right to a unanimous verdict by the Kentucky Constitution.") (citing *King v. Commonwealth*, 554 S.W.3d 343, 349 (Ky. 2018)). In holding as such, this Court was not faced with an additional and summarily damning admission of the alleged conduct. This case illuminates the necessity for cabining our precedent: reversal is not the universal, essential result of a unanimous verdict

error. Where manifest injustice will not result, this Court can find no palpable error. This case provides a compelling example of the force of that standard.

Given Sexton's counsel's unequivocal concession of guilt as well as the overwhelming evidence against Sexton, we cannot hold that any potential unanimity error would have resulted in a manifest injustice. There is no probability that the result of Sexton's trial would have been different had the jury instructions included specific details about the allegations of rape and incest. Any error that may have occurred neither threatened Sexton's entitlement to due process of law nor threatened the integrity of the judicial process. Accordingly, we decline to reverse Sexton's conviction based on any error that may have occurred in the jury instructions.

*C. KRE 404(b) Evidence*

Sexton further argues that the Commonwealth improperly introduced KRE 404(b) evidence of other bad acts committed by Sexton. This issue was not preserved for review. Therefore, as with the unanimity issue, our review is cabined to palpable error. As we note above, due to Sexton's admissions and concessions of guilt as well as the other overwhelming evidence against him, we cannot as a matter of law conclude that this error, if it occurred, resulted in any manifest injustice. Accordingly, we hold that no reversible error occurred on this issue.

### III. CONCLUSION

For the reasons stated above, we affirm the judgment of the Clay Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kayla Danielle Deatherage
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General