A Superior Court jury convicted the defendant, Michael J. Lebert, of armed assault with intent to murder and assault and battery by means of a dangerous weapon. On appeal, the defendant argues that the Commonwealth engaged in improper closing argument and that the trial judge erred in denying his motions for a required finding of not guilty. We affirm.
1. Closing argument. The defendant challenges several statements in the Commonwealth's closing argument. Where the objections were preserved at trial, we review each statement for prejudicial error and consider each in light of the entire argument, instructions, and evidence. See Commonwealth v. Tu Trinh, 458 Mass. 776, 785 (2011). In determining whether the cumulative effect of the alleged errors requires a new trial, we consider "(1) whether the defendant seasonably objected; (2) the judge's instructions to the jury; (3) the centrality of the error; (4) the jury's ability to sort out excessive claims by the Commonwealth; and (5) the strength of the Commonwealth's case." Commonwealth v. Ruiz, 442 Mass. 826, 835 (2004).
First, the defendant asserts that the prosecutor improperly argued facts not in evidence when arguing that the defendant had "plenty of time" to travel from a counseling appointment to the location of the incident and that "it wasn't like he had to walk there" because he had a driver's license.
"Prosecutors must limit the scope of their arguments to facts in evidence and inferences that may be reasonably drawn from the evidence." Commonwealth v. Coren, 437 Mass. 723, 730 (2002). "A prosecutor may, however, in closing argument, analyze the evidence and suggest what reasonable inference the jury should draw from that evidence." Commonwealth v. Grimshaw, 412 Mass. 505, 509 (1992). The inference "need not be necessary and inescapable, only reasonable and possible." Commonwealth v. Jones, 432 Mass. 623, 628 (2000).
In September, 2012, the victim was attacked while working at the Dugout Café and Pizza Shop in Chicopee (Dugout Café). At trial, the victim testified that she called 911 at 10:39 A.M. The Commonwealth also offered evidence through an officer that the defendant had a driver's license. The defendant later elicited testimony that he was scheduled for a 9:30 A.M. counseling session in Holyoke, and that he was billed for one session lasting forty-five minutes to one hour. No evidence was entered as to the distance between the counseling center and the Dugout Café.
The prosecutor's statement that the defendant was able to travel to the Dugout Café after the appointment in time to commit the attack was a reasonable inference. The evidence suggested that the appointment could have ended after forty-five minutes. The Commonwealth did not need to prove how the defendant traveled to the Dugout Café, but was warranted in suggesting that there are means to travel other than walking.[2] Additionally, although there was no evidence of the precise distance between the two locations, the addresses of both locations were offered at trial and the jury would be warranted in using their general knowledge of the area. See Commonwealth v. Kingsbury, 378 Mass. 751, 753 (1979) ("Jurors are entitled to rely on their general knowledge of matters commonly known within the community"). The statement was therefore not improper.[3]
Second, the defendant contends that the prosecutor misstated facts when arguing that there were "at least three" DNA sources on a hatchet recovered at the scene. In her closing argument, the prosecutor stated that "there is no scientific evidence linking this defendant to the scene or to [the victim], but there is nothing excluding him either." She continued that, "according to the experts, there [are] at least three sources of DNA [on the hatchet]. Does that help us? Not really. But it is what it is. Again, it doesn't include the defendant but it doesn't exclude the defendant." The Commonwealth concedes that the claim of at least three sources of DNA was erroneous. Nonetheless, the Commonwealth argues that it was not prejudicial. We agree.
In context, the Commonwealth's closing expressly stated that there was no scientific DNA evidence that linked the defendant to the crime. Moreover, both the Commonwealth's expert and the defendant's expert acknowledged there could have been a third DNA source.[4] The fact that the judge, rather than the defendant, raised the issue also indicates that the argument was not harmful given the entire closing argument. See Commonwealth v. Kozec, 399 Mass. 514, 518 n.8 (1987). In addition, after a sidebar discussion with counsel, the trial judge instructed the jury that, "if there is an argument that the evidence does not exclude the defendant, that is not an argument that you can consider." At the defendant's further request, the judge supplemented that the jury's memory of the evidence controls and that they were not to draw inferences based on conjecture or speculation. The defendant was satisfied with the instruction. Under these circumstances, the misstatement was not prejudicial.
Third, the defendant contends that the Commonwealth shifted the burden when arguing that there was no scientific evidence excluding the defendant from the scene, hatchet, or victim. "Generally, a prosecutor 'cannot make statements that shift the burden of proof from the Commonwealth to the defendant.' " Commonwealth v. Cassidy, 470 Mass. 201, 226 (2014), quoting from Commonwealth v. Amirault, 404 Mass. 221, 240 (1989). "A prosecutor, however, 'is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case.' " Cassidy, supra, quoting from Commonwealth v. Feroli, 407 Mass. 405, 409 (1990).
In context of the entire trial, the statement was not an improper shift of the burden of proof. The prosecutor's statement was a response to defense counsel's closing argument, where defense counsel argued that DNA evidence on the hatchet excluded the defendant and that the Commonwealth failed to examine potential DNA profiles on other physical evidence. The prosecutor's response was that there was no scientific evidence linking or excluding the defendant to the scene or to the victim, but that "it wasn't for lack of trying." She then reviewed the efforts taken in the investigation, responding to defense counsel's arguments about other unexamined sources of DNA. Furthermore, the judge instructed the jury that the burden never shifted to the defendant and that they were to ignore arguments that the evidence did not exclude the defendant. There was no improper burden shifting and the specific instructions by the trial judge cured any concern. See Cassidy, supra at 225-226 (no burden shifting where prosecutor argued that "[t]here's not one shred of credible evidence [that] [a proposed third party culprit] was involved in anything.... That is a smoke screen and a diversion, which is what [the defendant] is all about. There is no evidence").
Even considering the asserted errors in the prosecutor's closing collectively, given the strength of the victim's testimony and the jury instructions, there was no error warranting reversal.
2. Denial of motions for required finding of not guilty. The defendant moved for a required finding of not guilty at the close of the Commonwealth's case, and renewed his motion at the close of all the evidence. The defendant contends that the judge erred in denying each and argues that there was insufficient evidence that the defendant was the assailant.
We review each conviction under the familiar standard of Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
a. Commonwealth's case-in-chief. At trial, the victim identified the defendant as the assailant. She testified that she was working at the Dugout Café in September, 2012, when the defendant entered. He asked if it was always "this dead in here," to which the victim responded that it was "this time of the day." He asked to use the men's room. The victim then testified that the "[n]ext thing I knew I was laying on the ground," and that someone had hit her. When she looked up, she saw the defendant holding a hatchet, and observed him for a "[c]ouple of minutes." She testified that she then stood up, grabbed the handle of the hatchet and a bottle from the bar, and began to fight back. During the altercation, the victim was "about arm's length" from the defendant. When she called emergency personnel, she described the assailant as a five feet, eight inch or five feet, nine inch white male wearing a gray hooded sweatshirt, whom she had seen before.
An officer estimated that, over the course of the investigation, he showed the victim between 150 and 200 photographs to identify the assailant. The victim selected the defendant from an array of eight photographs, and indicated that she was "100 [percent] sure that this is the man that assaulted me." Additionally, upon seeing the defendant's photograph, the victim exhibited a physical reaction; an officer testified that the victim "immediately said '[t]hat's him,' " that she "started shaking and her legs actually physically gave out," and that she cried hysterically. In its totality, the Commonwealth provided ample evidence for the jury to conclude that the defendant was the assailant.[5]
b. Deterioration of the Commonwealth's case. The defendant further argues that the Commonwealth's case deteriorated after the Commonwealth rested, requiring findings of not guilty on each charge. Specifically, the defendant argues that the case deteriorated after he produced evidence of an alibi and after his expert opinioned that the defendant did not match the DNA profiles on the hatchet.
As the jury were entitled to reject the defendant's expert's testimony in its entirety, the Commonwealth's case did not deteriorate based on this witness. See Commonwealth v. Platt, 440 Mass. 396, 404 (2003).
The defendant also presented evidence that he was in Holyoke for a counseling appointment that began at 9:30 A.M. and lasted forty-five minutes to one hour. The victim called 911 at 10:39 A.M. The fact that the defendant was at an appointment earlier that morning does not foreclose a finding of guilt beyond a reasonable doubt.
Judgments affirmed.

The Commonwealth conceded at oral argument that one cannot infer that a person has access to a vehicle simply because they have a driver's license.

The panel did not rely on the Commonwealth's record appendix page fifteen, a map outside of the record, setting forth the distance between the counseling center and Dugout Café. Thus we need not rule on the defendant's motion to strike the map.

The Commonwealth's expert testified that there were "at least two" potential DNA sources and "an indication of a third person." One DNA profile matched the victim and the second yielded inconclusive results. The defendant's expert also testified that there were two profiles but opined that the defendant did not contribute to the second profile. He testified that there could be other DNA on the hatchet, but that there was no reliable indication of a third DNA profile.

The defendant urges the court to consider the Supreme Judicial Court's holding in Commonwealth v. Gomes, 470 Mass. 352 (2015), which considers the limitations of eyewitness identifications. The decision does not apply retroactively. Id. at 376.