NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-231

COMMONWEALTH

vs.

MICHAEL LEBERT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in 2014, the defendant was convicted of armed assault with intent to murder and assault and battery by means of a dangerous weapon.  A panel of this court affirmed the defendant's convictions in 2018.  See Commonwealth v. Lebert, 92 Mass. App. Ct. 1129 (2018).  In 2023, the defendant filed a motion for a new trial.  A judge of the Superior Court denied the motion without an evidentiary hearing, and the defendant appeals from the denial of that motion.  He argues that newly discovered science of eyewitness identification as well as postconviction DNA testing raise substantial issues regarding the reliability of the evidence against him.  He also argues that two judges accepted invalid waivers of counsel leading to

structural error, and that the defendant's original appellate counsel was ineffective for not presenting this issue in the defendant's direct appeal.  We vacate the order denying the motion for a new trial and remand for an evidentiary hearing.

Background.  The victim worked the day shift at a neighborhood bar.  After serving a few customers, the bar emptied out, and the victim sat on a barstool, drank coffee, and scratched lottery tickets.  A man walked into the bar and asked to use the bathroom.  The next thing the victim remembered was waking up behind the bar, looking up at a man standing above her holding a hatchet.  The man had struck her in the back of her head with the hatchet.

At first, the victim looked up at the man for a couple of minutes.  Once she realized that she had been attacked, she jumped up and confronted the man.  She grabbed the hatchet handle with one hand and a liquor bottle with the other and swung the bottle at the man.  During the ensuing fight, the man punched the victim in the face and smashed a liquor bottle against her head.  She lost consciousness again and woke up in a pool of blood.

Police collected several items from the crime scene, including broken glass, swabs from blood stains, and the hatchet.  Of these items, the Massachusetts State Police Crime Lab (MSPCL) tested only the hatchet for DNA.  The Commonwealth's

2

expert testified at trial that the DNA sample obtained from the hatchet contained a mixture of DNA from at least two people. The major profile matched the victim, while the minor profile "yielded inconclusive results for comparison." The defense expert testified that the mixture contained only two profiles, and that the minor profile excluded the defendant.

During the investigation, police met with the victim four times and asked her to review, in total, between 150 and 200 black and white photographs of potential suspects. The victim did not identify her attacker in any of the photographs. Once police identified the defendant as a suspect, they met with the victim for a fifth time and presented her with a photo array comprising eight color photographs. The victim immediately identified the defendant's photograph; she hyperventilated, and her legs began to shake. Police officers held the victim up to prevent her from falling as she started to cry.

Before trial, the defendant dismissed his court-appointed lawyers and sought to represent himself. Two judges conducted waiver colloquies with the defendant, and both found that he knowingly and intelligently waived his right to counsel. The trial judge appointed standby counsel to assist the defendant. At trial, the defendant represented himself, although standby counsel took over and represented the defendant during the latter portion of the trial and presented all five defense

3

witnesses.  The defendant's defense at trial was alibi; he did not offer expert testimony on eyewitness identification.  The defendant was convicted of both charges.

In 2020, a judge allowed the defendant's motion for forensic or scientific testing under G. L. c. 278A, and the defendant hired a private laboratory to retest the hatchet, as well as other items recovered from the crime scene.  At around the same time, the MSPCL conducted a probabilistic genotyping analysis using a software program called STRMix.[1]  The MSPCL forensic scientist averred in her affidavit that assuming three DNA profiles, the results were within the margin of error.  Assuming four profiles, the defendant was included with statistical significance.  In his affidavit supporting the defendant's motion for a new trial, the defense DNA expert testified that the data offered empirical support for at most three profiles, and that the defendant was definitively excluded from the minor profile.

In another affidavit supporting the defendant's motion for a new trial, a psychologist testified that the defendant's case bore multiple risk factors for a mistaken identification.  His affidavit summarized much of the science regarding eyewitness

---

[1] STRMix is used to analyze complex DNA mixtures found on evidence and to produce a ratio expressing the likelihood that an individual is either included or excluded as a contributor to the DNA mixture.

4

memory and identification that Massachusetts courts have, since the defendant's trial, incorporated into our jurisprudence. See Commonwealth v. Gomes, 470 Mass. 352, 369-376 (2015), S.C., 478 Mass. 1025 (2018) (recognizing five generally accepted principles of eyewitness identification). These principles include that (1) human memory does not function like a video recording, (2) an eyewitness's certainty in her identification does not necessarily correlate to accuracy, (3) high levels of stress can interfere with accurate identification, (4) extraneous information perceived by the witness before or after making an identification can influence the witness's later recollection, and (5) a prior viewing of a suspect can reduce the reliability of a subsequent identification procedure including that suspect. Id. Gomes created provisional jury instructions[2] to apprise juries of these principles but noted that the instructions do not apply retroactively.[3] Id. at 379-388.

Discussion. 1. Newly discovered evidence. The judge may grant a defendant's motion for a new trial "if it appears that

_____

[2] The Supreme Judicial Court later approved and recommended the use of final model eyewitness identification instructions, which replaced the provisional instructions in November 2015. See Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051 (2015). See also Commonwealth v. McWilliams, 473 Mass. 606, 619 n.5 (2016).

[3] The defendant's trial took place in December 2014, whereas the Gomes decision was released in January 2015.

5

justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). When a defendant moves for a new trial due to newly discovered evidence, he must make two showings. First, a defendant must show that the evidence could not be discovered at the time of trial. See Commonwealth v. Cowels, 470 Mass. 607, 616 (2015). Second, a defendant must show that the newly discovered evidence would "cast[] real doubt on the justice of the conviction." Id., quoting Commonwealth v. Grace, 397 Mass. 303, 305 (1986). In other words, the key question is "whether the new evidence would probably have been a real factor in the jury's deliberations." Cowels, supra, quoting Grace, supra. A judge may deny a motion for a new trial without an evidentiary hearing "if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3). "In determining whether to conduct an evidentiary hearing, both the seriousness of the issue raised and the adequacy of the showing on that issue must be considered." Commonwealth v. Muniur M., 467 Mass. 1010, 1011 (2014).

The motion judge denied the motion for a new trial without an evidentiary hearing. He concluded that, as a legal matter, the research on eyewitness identification was not newly discovered evidence because the studies the psychologist relied on in his affidavit were published before the defendant's trial. The Commonwealth does not challenge the substantive validity of

6

the science of eyewitness identification but contends that the evidence cannot be considered newly discovered.

After the motion judge issued his order, the Supreme Judicial Court released its opinion in Commonwealth v. Mercado, 495 Mass. 763 (2025).  In Mercado, the Supreme Judicial Court concluded that "it was not until 2015 that we had a sufficient basis upon which to catalog the advancement in eyewitness identification research and prospectively incorporate it into our own jurisprudence."  Mercado, 495 Mass. at 767.  See Gomes, 470 Mass. at 367.  The court rejected the Commonwealth's argument that because some of the scientific studies concerning eyewitness identification were published before the defendant's trial, the science was not newly discovered.  Id. at 767 n.7.

In the present case, the Commonwealth makes precisely the same argument that the Supreme Judicial Court has since rejected.  We are bound by Mercado to conclude that as of the defendant's 2014 trial, the science of eyewitness identification had not yet been "incorporate[d] . . . into our own jurisprudence," and is properly considered newly discovered evidence.[4]  Mercado, 495 Mass. at 767.

---

[4] The defendant argues on appeal that the science of eyewitness identification can be considered "newly available evidence."  With respect to the science of eyewitness identification, the Supreme Judicial Court in Mercado recognized that there is no substantive distinction between "newly discovered" and "newly available" evidence.  Mercado, 495 Mass.

Having established that the science of eyewitness identification constitutes newly discovered evidence in this case, we address "whether the new evidence would probably have been a real factor in the jury's deliberations." Cowels, 470 Mass. at 616. We conclude that the defendant raised a substantial issue warranting an evidentiary hearing. The Commonwealth's case rose and fell with the victim's eyewitness identification of the defendant. Compare Commonwealth v. Gaines, 494 Mass. 525, 539-540 (2024) (affirming allowance of motion for new trial based on new eyewitness identification science where no physical evidence tied defendant to crime scene). As newly discovered evidence may bear on the reliability of the victim's eyewitness identification of the defendant, an evidentiary hearing will permit the defendant to argue that the facts averred in the psychologist's affidavit "would probably have been a real factor in the jury's deliberations." Cowels, supra.[5]

2. Structural error. The defendant argues that the motion judge erred in concluding that the defendant's waivers of

at 766 n.6. We construe the defendant's argument as referring to newly discovered evidence, and we reject the Commonwealth's argument that the defendant waived this argument.

[5] Since we conclude that the defendant raised a substantial issue regarding eyewitness identification, we do not reach the issues of DNA retesting or probabilistic genotyping, nor do we reach the defendant's confluence of factors argument.

counsel were constitutionally ineffective.  He contends that the improper waiver constitutes structural error entitling him to a new trial.  We disagree.

"'There is no question that the right to counsel in a criminal prosecution is a fundamental right' under both art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution."  Commonwealth v. Barros, 494 Mass. 100, 104 (2024), quoting Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228, 234 (2004).  Likewise, "criminal defendants have a constitutional right to represent themselves."  Barros, supra.  A defendant's waiver of the right to counsel must be made "knowingly and intelligently."  Id., quoting Faretta v. California, 422 U.S. 806, 835 (1975).  The judge bears the "serious and weighty responsibility" to ensure that a defendant's waiver is knowing and intelligent before accepting it (citation omitted).  Commonwealth v. Cavanaugh, 371 Mass. 46, 53 (1976).

A waiver of the right to counsel must give assurance "that the defendant was 'adequately aware of the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation.'"  Commonwealth v. Martin, 425 Mass. 718, 720 (1997), quoting Commonwealth v. Jackson, 376 Mass. 790, 795 (1978).  Although the judge must conduct an "appropriate

9

inquiry," there are no required questions the judge must ask during the colloquy. Barros, 494 Mass. at 105. See Commonwealth v. Pamplona, 58 Mass. App. Ct. 239, 241 (2003) ("[o]ur jurisprudence has resisted the suggestion that prescribed questions attend a judge's inquiry of a defendant seeking to represent himself"). When mental illness is at issue, judges may rely on their own observations and may, but need not, order a competency evaluation. See Commonwealth v. Carson C., 489 Mass. 54, 58 (2022). See also Commonwealth v. Jones, 479 Mass. 1, 14 (2018) ("[w]hile it may be useful for a judge to hear opinions from medical experts, the determination [of competency] is ultimately a legal, not a medical, judgment").

After reviewing the two waiver colloquies, we conclude that the judges did not err in finding that both waivers were made knowingly and intelligently. During the first colloquy, the judge asked the defendant about his level of education, whether he understood the proceedings, whether he understood that counsel was available, whether the defendant suffered from mental illness, and whether he was under the influence of alcohol or drugs. The judge also inquired into the defendant's understanding of the proceedings and informed the defendant of benefits of representation by counsel. During the second colloquy, the judge asked the defendant many of the same

questions.  She also inquired into the defendant's mental health conditions and mental health treatment, and the defendant's understanding of the seriousness of the charges against him and the maximum penalties he faced.  During the waiver colloquies, the judges informed the defendant of "the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation." Martin, 425 Mass. at 720, quoting Jackson, 376 Mass. at 795. Given that the judges explored the essential matters urged by case law, we cannot conclude that the waivers were invalid such that they led to structural error.

On the same basis, we reject the argument that the defendant's appellate counsel on direct appeal was ineffective for failing to investigate the defendant's claimed invalid waivers of counsel.  See Breese v. Commonwealth, 415 Mass. 249, 256 (1993) ("[a]ppellate counsel [is] not ineffective for choosing to forgo a meritless argument").  Assuming arguendo that the defendant's appellate counsel on direct appeal was ineffective for failing to fully investigate the defendant's mental illness, we agree with the motion judge that the record raises no bona fide doubt as to the defendant's competency to waive the right to counsel such that the failure to investigate "deprived the defendant of an otherwise available, substantial

11

ground of defense."  Commonwealth v. Saferian, 366 Mass. 89, 96

(1974).[6]

---

[6] Although we reject the defendant's structural error argument and his ineffective assistance of appellate counsel argument, we do not reach the confluence of factors argument, nor do we express an opinion on whether the defendant's self-representation at trial may be a factor in that analysis.

Conclusion.  We vacate the order denying the motion for a new trial and remand for an evidentiary hearing.

So ordered.

By the Court (Ditkoff, Singh & Smyth, JJ.[7]),

Clerk

Entered:  July 30, 2025.

---

[7] The panelists are listed in order of seniority.

13